**PETTIBONE** and others *against* **PHELPS** and others.

*Litchfield,*
June, 1840.

Pettibone
*v.*
Phelps.    | 13 | 445 |
    | 72 | 113 |

Where sundry plaintiffs in an action of trover for certain chattels, claimed title under a bill of sale from *S,* and the defendant, by virtue of a subsequent attachment, as a creditor of *S;* and it appeared, that the bill of sale was fraudulent and void, as against the defendant, in relation to the interest of *L,* one of the plaintiffs ; it was held, that the plaintiffs could not recover, although none but *L* participated in the fraud, or had any knowledge of it; the rule of law in such case being, that unless all the plaintiffs are entitled to recover, the verdict must be for the defendant.

Where the principal question in the cause was, whether a bill of sale from *S* to *L,* one of the plaintiffs, was fraudulent ; and to shew that it was not, the plaintiffs offered the testimony of a witness, an attorney at law, to prove that on the day preceding the date of the bill of sale, *S* went to the witness, and stated to him, that he wished to assign all the goods mentioned in the bill of sale to the plaintiffs, taking out 800 dollars for certain other creditors ; that the witness advised him how this might be legally done ; and that *S* then went to *L,* and effected his object, giving the bill of sale in question as security ; it was held, that such testimony, so far as it related to the conversation between *S* and the witness, before the bill of sale was given, and not in the presence of *L,* was inadmissible.

The misconduct of a juror, if it does not appear that it was occasioned by the prevailing party, or any one in his behalf ; if it does not indicate any improper bias upon the juror's mind ; and the court cannot see, that it either had, or might have had, an effect unfavourable to the party moving for a new trial, is not a sufficient ground for setting aside the verdict.

Therefore, where a juror, while the cause was on trial, said to one of the plaintiff's witnesses, that the trial had been a protracted one ; that a witness seldom had so rigid a cross-examination as *S,* (another witness of the plaintiff) and that he bore it well ; after a verdict for the defendant, it was held, that this conversation of the juror was not a sufficient ground for setting it aside.

THIS was an action of trover ; tried at *Litchfield, August* term, 1839, before *Sherman,* J.

On the trial, the plaintiffs claimed title to the articles of property mentioned in the declaration, by virtue of a conditional bill of sale from *Nathaniel Stevens* to them, dated the 6th of *February,* 1838, given to secure certain claims therein specified and referred to, one of which was a note for 800 dollars, from *Stevens* to *E. Grove Lawrence,* one of the plaintiffs. The defendants were creditors of *Stevens,* and had taken the same goods, by virtue of attachments against him, issued and served after the execution of said bill of sale, claiming that it was fraudulent and void. The plaintiffs contended, that it was given in good faith, to secure debts justly

due to them.    On this question, much evidence was introduced on both sides.    The plaintiff, moreover, contended, that if the jury should find, that if there was fraud between *Stevens* and *Lawrence,* yet if they should find that the demands of the other plaintiffs, and the transactions between them and *Stevens,* were in good faith, and without any knowledge by them of any fraud between *Stevens* and *Lawrence,* they should 'find a verdict for the plaintiffs ; and prayed the court so to charge the jury.    But the court on this point charged the jury, that if they should find, that the transaction between *Lawrence* and *Stevens* was fraudulent, as claimed by the defendants, they must return a verdict for the defendants, although the other plaintiffs had no participation therein, or knowledge thereof, and had conducted in good faith ; for the law was so, that unless all the plaintiffs were entitled to recover, their verdict must be for the defendants.

In the progress of the trial, the plaintiffs offered a witness, to testify, that on the day before the execution of said bill of sale, *Stevens* called upon him, at his office, as an attorney, and stated to him, that he wished to assign all the property, mentioned in said bill of sale, to the plaintiffs, and wished him to advise him how it could be done ; that *Stevens* particularly stated to the witness, that he wished to take 800 dollars out of his stock of goods, to be appropriated to certain creditors of his, called foreign creditors ; that the witness pointed out the manner, *viz.* that if he could raise 800 dollars, by a loan on the goods, it would be legal ; that accordingly the witness and *Stevens* went to *Lawrence* to get the money ; and that *Lawrence* finally assented to give his note for 800 dollars, and did give it, and took said security.    The defendants objected to the testimony of this witness, as to all the conversation between him and *Stevens,* which took place previous to their meeting with *Lawrence,* and all which was not uttered in his presence.    The court sustained the objection, and ruled out the testimony objected to.

The jury gave their verdict for the defendants ; and thereupon the plaintiffs moved in arrest of judgment.    *Frederick Buell,* one of the jurors, who gave the verdict, said, out of court, while the cause was on trial, to *Ithamar H. Smith,* that the trials before that court had been lengthy, and the cause on trial was protracted.    *Smith* spoke to him of the severity

with which the witnesses had been examined, naming, particularly, *Smith Stevens.* The juror then said, that a witness seldom had so rigid a cross-examination as *Smith Stevens* had, and that he bore it well. *Smith Stevens* had been a witness for the plaintiffs in the cause, and testified to facts which were material to the issue. The question whether his testimony was entitled to full faith and credit, was made and discussed by the counsel of the parties respectively; the defendants insisting that it was not.

The plaintiffs moved for a new trial, for the rejection of evidence offered by them, and for a misdirection; and the questions arising on such motion and on the motion in arrest of judgment, were reserved for the advice of this court.

*W. W. Ellsworth* and *L. Church,* in support of the motions, contended, 1. That the testimony of the witness offered by the plaintiffs, should have been received. The question was, whether the assignment was fraudulent. This depended upon the motives, the purpose, the object of the parties. What was *said,* by the assignor, in the progress of the transaction, is as material as what he *did.* It is, in truth, *a part of what he did. Bridge* v. *Eggleston,* 14 *Mass. Rep.* 245. 250. Whether the conversation was in the presence or the absence of the other party—whether it went for or against the validity of the assignment—made no difference with respect to its admissibility. The effect of the testimony was, to shew the *origin* of the transaction, its *nature* and *object;* and thus to repel the claim of fraud set up by the defendants.

2. That admitting the assignment to be fraudulent as to *Lawrence,* the plaintiffs may recover for all the goods *bona fide* assigned. The rights of the honest creditors are not to be affected by the fraud of *Lawrence.* The statute does not say, that the *instrument* of conveyance shall be void, but that the *conveyance* shall be. There may be different conveyances—*i. e.* subjects of conveyance—in the same instrument; the fair may stand, while the fraudulent fall. *Goodman* v. *Newell,* 13 *Conn. Rep.* 75. 81. *Thompson* v. *Pitcher,* 6 *Taun.* 359.

3. That upon the facts found, the judgment ought to be arrested, for the misconduct of the juror. He was guilty of a violation of his oath, in two respects: he spoke of the mat-

*Litchfield,*
*June, 1840.*
———————
Pettibone
*v.*
Phelps.

ters they had in hand to those who were not of the jury, and he suffered others to speak to him about the same. Nor was this mere idle talk. He clearly intimated his opinion of the credibility of *Smith Stevens :* he had had a rigid cross-examination, *and he bore it well.* It is not safe to open a door for such disclosures. Whether the conversation has actually had any effect, is not the criterion ; but it is, whether the secrets of the jury-room have been divulged. If this has been done, either party has a right to have the verdict set aside.

*O. S. Seymour,* contra, contended, 1. That the charge of the court was correct. In the first place, on the facts in the case, the entire deed was a nullity, and conveyed no title to *any* of the plaintiffs. The grantees are not made tenants in common in proportion to their respective demands, but are made, by the deed, joint tenants, with all the unities of that title ; and this indivisible title is infected with a fraud, which taints every particle of the property. *Hyslop* & al. v. *Clarke* & al. 14 *Johns. Rep.* 458.

Secondly, if the whole bill of sale was not void, it was void, at least, so far as it purported to convey a title to *Lawrence.* He was not, therefore, entitled to a verdict in his favour.

Thirdly, the other plaintiffs cannot recover, for two reasons : because by attaching the interest conveyed to *Lawrence,* the defendants became tenants in common with the other plaintiffs, and not liable to them in an action of trover for taking the goods ; (*Prince* v. *Shepard* & al., 9 *Pick.* 176.) and because the misjoinder of the plaintiffs is always fatal to the action, whether it appears on the pleadings, or is shewn under the general issue. *Gould's Plead.* 277. [*c.* 5. *s.* 113.] and authorities there cited.

2. That the testimony of the witness offered by the plaintiffs as to a conversation between him and *Stevens,* another witness, not in the presence of *Lawrence,* was properly rejected. It requires no argument to prove, that what *Stevens* said to the lawyer, in favour of his own purity, and what advice the lawyer gave him, out of court, is not evidence.

3. That the motion in arrest ought not to prevail. In the first place, if the juror violated his duty at all, the violation is not one of which the *plaintiffs* can complain. *Smith Stevens* was *their* witness. The rule is now settled, as it should be,

that a new trial will not be granted for the misconduct of ju- *Litchfield,*
rors, unless it appears that the party making the application ——— June, 1840.
has suffered from such misconduct.   *The Commonwealth* v.   Pettibone
*Roby,* 12 *Pick.* 496. 519.   *Danforth* & al. v. *Plumbe* & al.   *v.*
cor. *Thompson,* J.   *Baldwin* v. *Tucker,* cor. *Waite,* J., *Feb.*   Phelps.
1838.   But secondly, the juror was guilty of no misconduct.
The conversation had no bearing whatever on the merits of
the cause, or on any point in controversy.   It was the credit
of the witness generally, and not the effect of the cross-exam-
ination, that had been the subject of discussion.   But if other-
wise, the juror said nothing relating to his credibility as affect-
ed by the cross-examination.   He only said, that the cross-
examination was a rigid one, and that he bore it well—*i. e.*
he bore it without being disconcerted, or manifesting impa-
tience or vexation.   Every presumption is in favour of the
jurors.   Their language will be taken in its most innocent
sense.

WAITE, J.   The goods in question were formerly the
property of *Nathaniel Stevens,* from whom the plaintiffs and
defendants respectively derive their titles ; the former by a
bill of sale, the latter as attaching creditors.

The defendants claimed, that the bill of sale, so far as it
related to the interest conveyed to *Lawrence,* one of the
plaintiffs, was fraudulent and void as against the defendants.
One question was, what effect that circumstance, if proved,
would have upon the case.   The court instructed the jury,
that if such were the case, the plaintiffs could not recover,
although they had no participation in the fraud, or knowledge
of it ; and that unless all the plaintiffs were entitled to recov-
er, their verdict must be for the defendants.

This instruction was clearly right.   It is perfectly obvious,
that if the conveyance to *Lawrence* was fraudulent and void,
he could sustain no action alone against the defendants for
taking the goods.   He would stand as if no conveyance had
ever been made.   Nor can he place himself in a better situa-
tion, by uniting with others, who may have a valid title.
For it is incumbent upon them to prove the property in *all,*
not a part only, of the plaintiffs.   And it makes no difference
in what manner the title of one fails, whether in consequence
of no conveyance from the owner, or of a conveyance void

*Litchfield,*
June, 1840.

Pettibone
*v.*
Phelps.

by reason of fraud. If all the plaintiffs have not an interest in the goods, they fail to establish a material allegation in their declaration that they were possessed of them as *their own* property.

It is not necessary to inquire what interest the other plaintiffs acquired under the bill of sale, if the title of *Lawrence* was invalid ; nor what would be the appropriate remedy for an injury done to that interest. The question now is, merely, whether the present plaintiffs can recover, if the title of one of them fails ; and we are satisfied that they cannot.

2. The next inquiry is, whether the testimony offered by the plaintiffs and excluded by the court, was properly rejected.

The late Chief Justice *Swift,* in delivering the opinion of the court, in the case of *Barrett &* al. v. *French &* al., says, " it has uniformly been decided, that the declarations of the grantor, when the grantee is not present, prior or subsequent to the execution of the deed, cannot be admitted as evidence to invalidate the deed." 1 *Conn. Rep.* 365. The same principle, in our opinion, is applicable, when the declarations are offered in support of the conveyance.

Nor can the conversation, in this case, be considered as a part of the *res gestæ,* as claimed by the plaintiffs, so as to exempt the case from the operation of that rule. For the court excluded only that part of the conversation between *Stevens* and the witness, which took place previous to their meeting with *Lawrence,* and which was not uttered in his presence.

3. The remaining inquiry is, whether the misconduct of the juror was such as to make it the duty of the court to set aside the verdict.

It is now well established, by the modern authorities, that every instance of misconduct in a juror will not destroy the verdict.

The rule extracted from the cases seems to be, that however improper such conduct may have been, yet if it does not appear that it was occasioned by the prevailing party, or any one in his behalf ; if it do not indicate any improper bias upon the juror's mind, and the court cannot see, that it either had, or might have had, an effect unfavourable to the party moving for a new trial ; the verdict ought not to be set aside.

*The State* v. *Watkins,* 9 *Conn. Rep.* 47. *The Commonwealth* v. *Roby,* 12 *Pick.* 519. *Everett* v. *Youells,* 4 *B. & Adol.* 681. *Hill* v. *Yates,* 12 *East,* 228. *The People* v. *Ransom,* 7 *Wend.* 417. *Burne* v. *Phillips,* 1 *Gallis.* 360. *Crane* v. *Sayre,* 1 *Halst.* 110. *Smith* v. *Thompson,* 1 *Cowen* 221.

A contrary rule would, in many cases, operate most unjustly. It would punish an innocent person for the offence of another. If a juror conducts improperly, and violates his duty and his oath, *he* ought to be answerable for it, and not a party in the cause, who was in no manner accessory to the misconduct.

To deprive a party of a verdict, which he may have honestly obtained, after a protracted and expensive litigation, merely because a juror may have improperly spoken of the cause, when he could have received no benefit from that act of the juror, and his opponent no injury, would seem hardly compatible with a due administration of justice.

If, indeed, he, or any agent of his, will approach a juror, while the cause is on trial, and speak of the subject matter of the suit, it will destroy a verdict in his favour. He ought to know and feel that he may lose, but cannot gain, by such conduct. Depriving him of his verdict will operate as a punishment for his violation of the law. *Bennett* v. *Howard,* 3 *Day* 223. Lessee of *Cluggage* v. *Swan,* 4 *Binn.* 150. 2 *Hale's P. C.* 308.

So, too, if it appear that the unsuccessful party either did, or might, have sustained injury from the juror's misconduct, it is reasonable that a new trial should be granted, that justice may be done between the parties.

It is, undoubtedly, the duty of courts, as far as practicable, to preserve the purity of trials by jury ; and it is said, that this can best be effected, by setting aside every verdict, where a juror has spoken of the cause contrary to his oath. But it is difficult to see how such a result would be produced. The juror does not suffer, by setting aside the verdict : it is the successful party alone, that is injured. It is true, in some cases, that rule seems to have been adopted ; but in our opinion, it is neither in conformity with a just administration of justice, nor with the more recent cases.

In this case, the court has found, that the juror, while the cause was on trial, said to one of the plaintiffs' witnesses, that

*Litchfield,*
June, 1840.

Pettibone
*v.*
Phelps.

the trial had been lengthy, and the cause protracted; that a witness seldom had so rigid a cross-examination as *Smith Stevens,* another witness of the plaintiffs, and that he bore it well.

What was said respecting the length of the trial can be of very little importance. The expressions relative to *Stevens,* would seem to indicate a feeling in favour of the plaintiffs, rather than against them.

The person to whom the conversation was addressed, does not appear, in any manner, to have acted in behalf of the defendants, or to have attempted to influence the mind of the juror in their favour. And although the conversation of the juror was improper—in violation of his oath—and calling for the animadversion of the court; yet we cannot say, that it was such as to require that the verdict should be set aside.

But there is another objection to the motion. It does not appear but that the misconduct of the juror was known to the plaintiffs, before the trial closed. If it was, they were bound to make the objection at the time, and not wait till after a verdict against them. Their omission to state that allegation in their motion, renders it insufficient. This principle has been settled, by this court, in the case of *Selleck* v. *The Sugar Hollow Turnpike Company, post.*—[next case.]

Our opinion, therefore, is, that no new trial should be granted.

In this opinion the other Judges concurred, except STORRS, J., who was not present.

New trial not to be granted.
Motion in arrest overruled.