PAMELA BARONE SPEED, EXECUTRIX (ESTATE OF MILDRED F. BARONE) *v.* ANTHONY F. DELIBERO ET AL.
(13786)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and HULL, Js.

Argued March 6—decision released June 12, 1990

---

*Arnold J. Bai,* with whom were *Madonna A. Sacco* and, on the brief, *Garie J. Mulcahey,* for the appellants (defendants).

*Christopher D. Bernard,* with whom, on the brief, was *Richard A. Fuchs,* for the appellee (plaintiff).

CALLAHAN, J. The sole issue in this appeal is whether the Appellate Court correctly determined that a new trial was necessary because of juror misconduct. The plaintiff, Pamela Barone Speed, executrix of the estate of Mildred F. Barone, brought a wrongful death action against the defendants Anthony F. DeLibero, a physician, and Anthony F. DeLibero, M.D., P.C. On December 29, 1987, the jury returned a verdict in favor of the defendants. The plaintiff filed motions for a mistrial and in arrest of judgment on the basis of juror misconduct.[1] The trial court denied both motions and rendered judgment for the defendants. The plaintiff appealed to the Appellate Court. The Appellate Court concluded that the trial court should have granted the plaintiff's motion for a mistrial and motion in arrest of judgment.[2] The Appellate Court accordingly set aside the judgment for the defendants and remanded the case

---

[1] The plaintiff's motion for a mistrial was made during jury deliberations. The motion in arrest of judgment was made after the jury had returned its verdict.

[2] Both the motion for a mistrial and the motion in arrest of judgment were made on the basis of juror misconduct. Consequently, the Appellate Court considered both motions to present one claim. We will do likewise.

for a new trial. *Speed* v. *DeLibero,* 19 Conn. App. 95, 103, 561 A.2d 959 (1989) (*Stoughton, J.,* dissenting). We granted certification to appeal limited to the following issue: "Did the Appellate Court err in concluding that the [plaintiff] had demonstrated as a matter of law that juror misconduct had probably prejudiced [her] and that a new trial was necessary?" We answer that question in the affirmative and therefore reverse the decision of the Appellate Court.

The record reflects the following relevant facts. On December 22, 1987, the jury began its deliberations. Around noon on the next day, it sent two notes to the court. In the first, the jury asked the court to replay "Dr. DeLibero's testimony during cross-examination by Mr. Fuchs regarding the monitoring of the patient's blood pressure and pulse during the procedure." The second note requested the court to clarify whether the jury had to arrive at a unanimous decision on each paragraph of the plaintiff's complaint in order to reach a unanimous verdict. The trial court informed the jury that DeLibero's testimony would be replayed after lunch and that, thereafter, the jury would be excused for the remainder of the day. The second question regarding unanimity, the court told the jury, would be answered the following day which was Christmas Eve, and the jury would thereafter resume deliberations.[3]

When the court reconvened at 2 p.m., another note was handed to the court.[4] The note stated: "We amend our previous request regarding Dr. DeLibero's testimony to limit the testimony to that presented when Mr. Fuchs questioned on the blackboard the time dis-

---

[3]·The trial judge reminded the jury that "tomorrow's Christmas Eve. So no matter what, we're going to suspend at noon."

[4] The record reflects that the foreman had attempted to deliver the note to the sheriff before the jury reconvened. The sheriff refused to accept the note until the entire jury reassembled.

crepancy regarding monitoring of the patient's blood pressure. We wish to hear the doctor's answer to this only. Also, we wish to remain in deliberation after this testimony today until 5:00 p.m." Upon inquiry, the trial court learned that four of the jurors had drafted the note during the lunch hour, outside the jury room and in the absence of two of the jurors.

The trial court reminded the jury that deliberations were to be conducted only in the jury room when all of the jurors were present. The court then observed that the amended request "suggests that you are feeling some time constraints with respect to reaching a decision." In an effort to alleviate any time pressures the jurors might have had because of having to deliberate on Christmas Eve, the court decided at that time to excuse the jurors until the Monday following Christmas. Before doing so, the court emphasized to the jurors that they were not to recommence deliberations until the court answered their requests for information.

The jury foreman then interjected that the jury did not intend that the unanimity question be complicated; he stated that they "just wanted reconfirmation" of their understanding that they had to render a unanimous decision on each paragraph of the complaint. The foreman also stated that although the lunchtime note was not formulated in the presence of all of the jurors, they were all notified of it and everyone was in agreement.[5] Thereafter, in the absence of the jury, both the plaintiff and the defendants moved for a mistrial because of improper deliberations by the four jurors outside the jury room without the presence of the other jurors.

---

[5] The foreman told the court that the note was presented to the fifth juror before it was presented to the sheriff, and the sixth juror was informed of it when he arrived, and that both agreed with it.

The trial court, subsequent to the motions for a mistrial, recalled the jury and questioned the foreman. In response to the court's inquiries, the foreman stated that when the four jurors formulated the note, they had not discussed any of the "evidence." He said that their lunchtime conversation related solely to limiting their request to just one portion of the testimony and the fact that they wanted to continue deliberating until the end of the day.[6]

After the court excused the jury, it rendered its decision denying the parties' motions for a mistrial. The court concluded that the substance of the discussion of the four jurors "was limited largely, if not exclusively, to procedural problems" and did not involve substantive discussion of the evidence. The court also found that while the jury obviously felt time constraints because of the Christmas holiday, that concern had been removed when further deliberations were postponed until the Monday after Christmas. When the jury reconvened after Christmas, the court, ignoring the request that only limited testimony be replayed, played back the entire testimony originally requested and answered the unanimity question.

---

[6] The following colloquy occurred:

"The Court: Mr. Botten, at your luncheon meeting where the four of you had lunch together, was there any discussion of the case other than whether or not you wanted to have all the testimony read?

"James Botten [foreman]: That was the only discussion we—

"The Court: What about the determination expressed that you would like to continue until 5:00 p.m.?

"James Botten: That was discussed partially during that period also.

"The Court: Anything discussed about the evidence itself or anything like that?

"James Botten: No, we did not discuss any—any of the evidence. Just the fact that we wanted to just hear that one portion of the testimony and that we want to continue because we thought that it would be a shorter testimony and we would therefore just like to continue until the end of the day."

There is no disagreement concerning the fact that the four jurors violated the trial court's instructions and conducted at least enough discussion concerning the case outside of the jury room, at a time when some of the jurors were not present, to revise the jury's original request for the testimony to be replayed. Nevertheless, not every instance of juror misconduct requires a new trial. *Williams* v. *Salamone,* 192 Conn. 116, 122, 470 A.2d 694 (1984); *Hamill* v. *Neikind,* 171 Conn. 357, 360, 370 A.2d 959 (1976); *Pettibone* v. *Phelps,* 13 Conn. 445, 450 (1840). "To deprive a party of a verdict, which he may have honestly obtained, after a protracted and expensive litigation, merely because a juror may have improperly spoken . . . when he could have received no benefit from that act of the juror, and his opponent no injury, would seem hardly compatible with a due administration of justice." *Pettibone* v. *Phelps,* supra, 451.

" 'The rule, long ago enunciated by this court, is that "if it does not appear that [the juror misconduct in question] was occasioned by the prevailing party, or any one in his behalf; if it do[es] not indicate any improper bias upon the juror's mind, and [if] the court cannot see, that it either had, or might have had, an effect unfavourable to the party moving for a new trial; the verdict ought not to be set aside." ' *Bernier* v. *National Fence Co.,* 176 Conn. 622, 628, 410 A.2d 1007 (1979), quoting *Pettibone* v. *Phelps,* [supra, 450]." *Williams* v. *Salamone,* supra, 119. Rather "[t]he burden is on the moving party in a civil proceeding to establish that juror misconduct denied him a fair trial. See *Bernier* v. *National Fence Co.,* supra; *Hamill* v. *Neikind,* supra; *Pettibone* v. *Phelps,* supra." Id., 120. "To impose the burden of establishing the validity of the verdict on the prevailing party where he did not bring about the impropriety would be contrary to our sense of justice and fair play. We continue to adhere to the rule that,

absent misconduct brought about by the prevailing party, the burden is on the complainant to show prejudice." Id., 120–21. That burden requires the moving party to demonstrate that the juror misconduct complained of resulted in probable prejudice to the moving party. Id., 121–22.

The plaintiff argues that she suffered probable prejudice and was denied a fair trial in this case because the circumstances are such that it would have been impossible for the four jurors to have drafted the note as they did without having first discussed the evidence among themselves during the luncheon recess. In support of her contention, the plaintiff cites the instructions in which the court "urged" the jury to make any requests to have testimony replayed as specific as possible "because it will aid us and you in focusing [on] what it is you really are concerned about, without the necessity of playing more of the tape than is really needed." The plaintiff maintains that if it is presumed that the jurors followed the court's instructions; *State* v. *Washington,* 182 Conn. 419, 429, 438 A.2d 1144 (1980); then the trial court should have concluded that the four jurors discussed the substantive evidence at the time that they composed the note revising the request for testimony they wished to have replayed. Otherwise the jurors could not have arrived at a consensus on the testimony they desired repeated. The trial court, the plaintiff urges, was therefore required to declare a mistrial. We disagree.

The trial court was in the best position to evaluate the testimony given by the foreman of the jury and the impact of any alleged juror misconduct on the fairness of the trial. *State* v. *Rodriguez,* 210 Conn. 315, 326, 554 A.2d 1080 (1989); *State* v. *Cubano,* 203 Conn. 81, 92, 523 A.2d 495 (1987). The trial court must assess the credibility of testimony and the weight to be accorded to that testimony. *McNamee* v. *Woodbury Congrega-*

*tion of Jehovah's Witnesses,* 194 Conn. 645, 648, 484 A.2d 940 (1984). "It is not for us to question that court's findings absent a showing of clear error." Id. We allow the trial court wide discretion in deciding mistrial motions and "the trial court's determination will be reversed only where it can fairly be said that it abused its discretion" in denying the motion. *State* v. *Rodriguez,* supra, 326; *State* v. *McCall,* 187 Conn. 73, 77–78, 444 A.2d 896 (1982); *Bernier* v. *National Fence Co.,* supra, 628; *William Carver Co.* v. *Poos Bros., Inc.,* 778 S.W.2d 684, 688 (Mo. App. 1989); see *Pisel* v. *Stamford Hospital,* 180 Conn. 314, 322, 430 A.2d 1 (1980).

When the court asked the foreman whether the conversation at lunch involved discussion of any of the "evidence" presented in the case, the foreman answered in the negative. The trial court accepted, was satisfied with, and acted upon this response. A reviewing court cannot, on appeal, speculate on what the jurors may have discussed and then speculate that the discussion probably prejudiced the plaintiff. To reach such a conclusion without support in the record would be unfair to the defendants. We agree with the dissenter that the majority opinion of the Appellate Court does rest upon speculation in this instance.

The plaintiff also claims that she was prejudiced because the "note by the four jurors impliedly withdrew the legal question concerning unanimity raised in the earlier note." She claims, consequently, that the discussions must have been of substance because they eliminated the need for information that had earlier been requested. The trial court, however, gave no indication that the unanimity question had been withdrawn and the court ultimately responded to it. Moreover, no request was made by any juror to withdraw the unanimity question and the lunchtime note makes no such request. This claim of the plaintiff is without merit.

Under the circumstances of this case, the plaintiff has failed to sustain her burden of showing probable prejudice. Consequently, we conclude that the Appellate Court mistakenly determined that the trial court had abused its discretion by denying the plaintiff's motions for a mistrial and in arrest of judgment.[7]

The judgment of the Appellate Court is reversed and the case is remanded to that court for resolution of remaining issues.

In this opinion the other justices concurred.

---

[7] The plaintiff also briefed alternative grounds for the affirmance of the Appellate Court's decision. We decline to review anything other than the certified issue.