ANN LUKSTAS ET AL. *v.* SAINT FRANCIS HOSPITAL AND MEDICAL CENTER ET AL.
(8614)

NORCOTT, FOTI and CRETELLA, Js.

Argued November 5—decision released December 25, 1990

*Joseph E. Fazzano,* with whom, was *Andrew Dewey* for the appellants (plaintiffs).

*Edward J. Daly, Jr.,* for the appellees (defendant Joseph Sadowski et al.).

NORCOTT, J. The plaintiffs in this medical malpractice action appeal from the judgment, rendered after a jury trial, in favor of the defendants Neurosurgical Associates, Inc., and Joseph Sadowski, a neurosurgeon.[1] The plaintiffs challenge the trial court's denial of their motion to set aside the verdict because (1) the court failed to find that juror misconduct resulted in probable prejudice to the plaintiffs and (2) the court improperly submitted interrogatories to the jury and repeatedly recharged the jury as to the standard of care.

The facts relevant to this appeal are as follows: On August 1, 1989, the trial court submitted the case to the jury together with eight interrogatories to which

---

[1] On April 25, 1989, the plaintiffs, Ann and Edward Lukstas, withdrew the case against the defendant St. Francis Hospital and Medical Center. We will refer in this opinion to Sadowski and Neurosurgical Associates, Inc., as the defendants.

the plaintiffs duly excepted. During the following day's deliberations, the jurors, evincing confusion, requested the testimony of three witnesses and asked that the court reinstruct them regarding the "standard of care," "informed consent" and the interrogatories. The court overruled the plaintiffs' objection to these inquiries and repeated the requested instructions.[2] Later that same day, the jury asked for further clarification of the "standard of care" instruction alone.

On August 4, 1989, the jury informed the court that it was deadlocked. The court then gave the jury a Chip Smith charge, urging it to reconvene in a further attempt to reach a verdict. After a recess, the plaintiffs' attorney revealed for the record and the trial court accordingly made full disclosure of the fact that, on the preceding day, two members of the jury had engaged in an ex parte communication with the judge and his clerk concerning the deadlocked status of the jury.[3] The plaintiffs then moved for a mistrial and were joined in that motion by the defendants. The trial court denied the joint motion and, shortly thereafter, the jury returned a verdict for the defendants.

The plaintiffs moved to set aside the jury's verdict. The court granted the plaintiffs an evidentiary hear-

---

[2] The plaintiffs' motion for the removal of the interrogatories was similarly denied by the trial court.

[3] The trial court's recitation of the incident is as follows:

"The Court: Yes, I would be glad to state for the record what transpired. A juror came in and before I could even stop him he seemed to just talk and said that, he said, we are deadlocked but we are still trying, there is some hope, we are not very optimistic about it and he said the vote is five to one, would you like to know more about it and I said, no, we don't care to know any more about it. And that was the substance. I may have omitted something but I think the record should reflect that and, in fact, I commented to our clerk, Mr. Otto, I said, I don't like these people coming in, I don't care to know about these things. But, at any rate, he did blurt it out and I couldn't stop him and having learned it, I felt I should tell you gentlemen—what happened."

ing on their motion specifically with respect to whether any prejudice had been occasioned by juror misconduct. The individual jurors testified at this hearing on September 26, 1989. On October 6, 1989, the trial court heard further oral argument on the plaintiffs' motion, denied the motion and rendered judgment in favor of the defendants.

The plaintiffs first argue that certain facts surrounding the proceedings in the trial court constituted prejudice to them and warrant a new trial. We agree.

These further facts are relevant to our decision. All six jurors testified at the evidentiary hearing. The jury foreman testified that he could not recall his exact conversation but did remember that "if he [the judge] said anything about [urging the jury to reach a verdict] it was only [in] the most general terms that it is very important to reach a verdict for all parties involved." When questioned further, the foreman did not elaborate on that conversation. He concluded by stating that he never told the other jurors about his visit to the judge's chambers.

The second juror stated that he inadvertently happened upon the foreman and the judge and joined in their conversation. The juror's vague recollection of that conversation was that it concerned "whether we should continue for the balance of the day . . . ." He testified that his role in the conversation was limited to telling the judge that the jury needed more time. The juror could not remember whether the other four jurors were told of the ex parte communication.

The third and sixth jurors knew nothing of the ex parte visit. They also stated that they were aware of no juror deliberations held outside of the presence of the full jury.

The fourth juror recalled that the foreman went "to ask the judge some question, but I don't remember what it was." He testified that the foreman notified the other jurors of his visit to the judge. The juror also "clearly recollect[ed] discussing the case with other jury members outside the jury room. When asked about the substance of those discussions, the juror described them as concerning the "difficulty with a situation," "how [we] can best explain this [difficulty] to another member" and "confirming what we knew."

The fifth juror had no knowledge of the ex parte communication but stated, with respect to jury deliberations, that there was at least one occasion during lunch where substantive issues concerning the case were discussed by only a few of the jurors.[4]

After hearing this testimony and hearing further argument on the plaintiffs' motion to set aside the verdict, the trial court determined that the plaintiffs were not prejudiced by what had transpired and that, therefore, a new trial was not warranted. We disagree.

" ' "The rule, long ago enunciated by this court, is that 'if it does not appear that [the juror misconduct in question] was occasioned by the prevailing party, or any one in his behalf; if it do[es] not indicate any improper bias upon the juror's mind, and [if] the court cannot see, that it either had, or might have had, an effect unfavourable to the party moving for a new trial;

---

[4] The juror's testimony on the question of improper juror deliberations states in pertinent part:

"Q. At lunchtime, were there discussions that were held about this case outside the presence of the full jury?

"A. I would say yes . . . I can only remember one, one instance specifically.

"Q. Were some issues discussed?

"A. I think so.

"Q. In the absence of the full jury?

"A. I think so."

the verdict ought not to be set aside.' " . . .' *Williams* v. *Salamone,* [192 Conn. 116, 119, 470 A.2d 694 (1984)]." (Citations omitted.) *Speed* v. *DeLibero,* 215 Conn. 308, 313, 575 A.2d 1021 (1990). The burden rests on the moving party in a civil case to demonstrate that the juror misconduct complained of resulted in probable prejudice to him. Id., 314. Against this general principle we measure the allegations of juror misconduct here as manifested in both the ex parte conversation and the juror deliberations held outside the presence of the full jury.

In the present case, there is no question that during a recess an ex parte conversation ensued among the jury foreman, a second juror and the judge. While the record demonstrates that the judge was caught somewhat off guard by the suddenness of the foreman's appearance in his chambers, it also reveals that a conversation regarding the continuing deliberations did take place. "Any ex parte meeting or communication between the judge and the foreman of a deliberating jury is pregnant with possibilities for error." *United States* v. *United States Gypsum Co.,* 438 U.S. 422, 460, 98 S. Ct. 2864, 57 L. Ed. 2d 854 (1978).

Here, the total circumstances surrounding the unfortunate ex parte conversation are disturbing. The jury had already indicated to the court by written note that it was hopelessly deadlocked, the case was complex and "hard" by everyone's assessment and the jury foreman had gone to the judge's chambers seeking direction regarding the deadlock. We also note that, after hearing what, in itself, might seem to be an innocuous statement by the judge concerning the importance of reaching a verdict, the jury did in fact reach a verdict within minutes of the ex parte communication. Although we cannot discern from the record what coercive effect, if any, the court's comments may have ulti-

mately had on the jury, we do note that at least one other juror testified that the communication was reported to the jury. "Unexpected questions or comments can generate unintended and misleading impressions of the judge's subjective personal views which have no place in his instruction to the jury—all the more so when counsel are not present to challenge the statements. Second, any occasion which leads to communication with the whole jury panel through one juror inevitably risks innocent misstatements of the law and misinterpretations despite the undisputed good faith of the participants." Id., 460–61.

The traditional judicial Chip Smith charge to a potentially deadlocked jury has the advantage and protection of counsel's opportunity to monitor the charge and to object and except thereto when necessary. We cannot determine from the record in this case what the exact words of the ex parte communication were or what effect they had on the foreman and the rest of the jury. We can say, however, that the plaintiffs made a sufficient showing that the conversation took place, that it was communicated to at least half of the jury and that, under the circumstances of this case, a verdict was returned with unexpected immediacy. Whether the plaintiffs have demonstrated by these factors that they were prejudiced and denied a fair trial is resolved by our next discussion.

In addition to the claim of prejudicial ex parte communication, the plaintiffs argue that the fact that certain jurors deliberated outside the presence of the full jury constituted prejudicial error and warrants a new trial. It is clear from the testimony of certain jurors at the evidentiary hearing that such improper deliberations took place. Not all juror impropriety, however, impacts on the fairness of the trial. See *Speed* v. *DeLibero,* supra.

In *Speed,* our Supreme Court held that the trial court did not abuse its discretion by denying the plaintiffs' motions for mistrial when the trial court, after a hearing on alleged juror misconduct, was satisfied that no discussion of "evidence" presented in the case was part of the improper juror deliberations. In this case, the trial court made no such finding; it merely concluded in its memorandum of decision that it found no prejudice to the plaintiffs in the proceedings. This conclusion was made, however, in the face of a clear showing by the plaintiffs that "issues" and certain "difficulties" had been discussed by some jurors out of the presence of the full jury. While the exact nature of these "issues" and "difficulties" was not fully developed, the record amply supports the conclusion that the juror conversations in question involved more than innocuous procedural niceties.

Coupled with the disturbing problem of the ex parte conversation between the judge, the foreman and another juror, the matter of the improper juror deliberations presents a pattern of misconduct that, under the circumstances of this case, warrants a new trial. The plaintiffs specifically attempted to show that probable prejudice resulted when an ex parte conversation concerning the trial judge's desire for a verdict was conveyed to a "hopelessly deadlocked" jury, who returned a verdict within minutes of the conversation, and when juror discussions regarding substantive issues in the case were held outside of the presence of the full jury. The trial court, as the closest party to the unique developments in this case, should have concluded from all the evidence presented that the plaintiffs had met their burden of demonstrating that the juror misconduct resulted in probable prejudice to the moving party and that fairness dictated that a new trial was in order.

Because our resolution of the plaintiffs' first claim is dispositive, and, further, because we find no merit

to their claim of instructional error, we will not discuss it here.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.