## IN RE SHANA M.*
## (9715)

O'CONNELL, FOTI and HEIMAN, Js.

Argued November 4, 1991—decision released January 21, 1992

*Philip W. Ball,* for the appellant (respondent mother).

*Ann-Marie DeGraffenreidt,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Susan T. Pearlman,* assistant attorney general, for the appellee (petitioner).

*Lynn Jenkins,* for the minor child.

O'CONNELL, J. The respondent mother appeals from the judgment terminating her parental rights to her

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 2026, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

daughter Shana, pursuant to General Statutes (Rev. to 1987) § 17-43a (now General Statutes § 17a-112). This action was brought by the commissioner of children and youth services by way of a petition to terminate the parental rights of Patricia M. and Carl M.[1] with respect to their daughter Shana. The trial court found by clear and convincing evidence that there was no ongoing parent-child relationship between the respondent and Shana and that it was not in Shana's best interest to allow further time for such a relationship to develop. Furthermore, it found that termination of the respondent's rights was in Shana's best interest. The respondent appealed.

The respondent raises two claims on appeal. First, she contends that the trial court engaged in improper ex parte contact with the assistant attorney general representing the petitioner. Second, she argues that the trial court should have found that Shana's foster parents and the department of children and youth services (DCYS) prevented her from maintaining a meaningful relationship with Shana. We affirm the judgment of the trial court.

The respondent's first claim concerns an alleged ex parte contact with the petitioner's counsel by the trial judge. The respondent argues that the delivery of a copy of an English House of Lords decision[2] to the petitioner's counsel prior to the hearing was improper. The record discloses that the trial judge's independent research discovered the 1988 English case that he felt touched on many of the issues involved in the present case. Recognizing that most Connecticut attorneys may have limited access to English case law, the trial judge

---

[1] The trial court terminated the parental rights of Carl M. on the ground that he had abandoned Shana. General Statutes (Rev. to 1987) § 17-43a (b) (1). Carl M. has not appealed. In this opinion, the term respondent refers to Patricia M. only.

[2] *In re K.D.*, 1 App. Cas. 806 (H.L. 1988).

made a copy of the decision for each counsel. At the opening of court the next day, he handed one copy to the respondent's attorney and one copy to the attorney for the minor child and remarked that he had given a copy to the petitioner's attorney earlier that morning.[3] From this scenario, the respondent's attorney asks us to conclude that the judge must have had an improper ex parte meeting with petitioner's counsel.

The petitioner argues that we should not review this claim because it was not raised at trial, but rather was brought up for the first time in the respondent's brief. Despite the merit of this argument, we elect to review the claim under the plain error doctrine because it implicates the ethical conduct of the trial court and reflects on the entire process of justice. Practice Book § 4185; *In re Jonathan P.*, 23 Conn. App. 207, 211, 579 A.2d 587 (1990). It is firmly established that "any ex parte communication concerning a pending proceeding between a lawyer and a judge is prohibited by both the rules of professional conduct and the code of judicial conduct. Connecticut Rules of Professional Conduct, Rule 3.5; Connecticut Code of Judicial Conduct, Cannon 3.A. (4)." *State* v. *John*, 210 Conn. 652, 672, 557 A.2d 93, cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989).

---

[3] The remarks of the trial judge were as follows: "I should just state, for the record, Attorney Bakulski knows this, as of this morning, and the other two attorneys do not. For what it's worth, I was in the state library on a—last week, doing some research on a number of cases, and I found a—an English case from 1988, it's quite a recent case, by the House of Lords, which is the English equivalent of our Supreme Court, that touched on a lot of concerns raised in the trial. Not that it's, by any means, on all fours, and not that it's not distinguishable, and not that our system's laws are not somewhat different from the English . . . [and] not that I thought counsel should be aware of it. Attorney Bakulski, I gave a copy this morning, if I could, Mrs. Lamb, I just made copies for all counsel, knowing that sometimes your English law libraries tend to get a little bit out of date when you're in private practice. And you can read them, that's nothing I expect you to be prepared on today, by any means, but, you might want to read it, at your convenience."

Impartiality on the part of a judge is a fundamental tenet of our system of jurisprudence. Furthermore, not only is actual impartiality required but also the appearance of impartiality. *Bonelli* v. *Bonelli,* 18 Conn. App. 207, 211, 557 A.2d 559 (1989), rev'd, 214 Conn. 14, 570 A.2d 189 (1990). "[J]ustice must satisfy the appearance of justice." *Offutt* v. *United States,* 348 U.S. 11, 14, 75 S. Ct. 11, 99 L. Ed. 11 (1954). The trial judge must be ever vigilant to consider his conduct from the viewpoint not only of an unbiased observer, but also of the biased litigant who is desperately searching to find a flaw in the judge's conduct. To paraphrase the Scottish poet Robert Burns, Oh, what a power to give us, to see ourselves as others see us.[4]

To find bias and misconduct on the part of the trial judge in the present case, however, requires a stretch of our legal imagination beyond the elasticity contained therein. Our examination of the record discloses a hard working trial judge who commendably wanted to share the fruits of his research with the attorneys before him. Although it would have been a better procedure for the trial judge to have delivered copies of the English decision to all counsel simultaneously, this slight departure from preferred procedure does not, in this case, warrant the drastic remedy of reversal.

The respondent's second claim is that the trial court improperly failed to find that unreasonable conduct by DCYS and Shana's foster parents prevented her from maintaining a meaningful relationship with Shana. The

---

[4] The actual text of Robert Burns' verse from *To a Louse* is:

"O, wad some power the
giftie gie us
To see oursels as ithers
see us!
It wad frae many a blunder
free us
And foolish notion."

respondent challenges the factual basis for the trial court's decision. We cannot retry the facts. *In re Noel M.,* 23 Conn. App. 410, 418, 580 A.2d 996 (1990). "On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. . . . The trial court, following the mandates of General Statutes [Rev. to 1987] § 17-43a, properly determined, on the basis of clear and convincing evidence, that no ongoing parent-child relationship existed." (Citation omitted.) *In re Megan M.,* 24 Conn. App. 338, 342, 588 A.2d 239 (1991).

The judgment is affirmed.

In this opinion the other judges concurred.