ROBERT T. DESALLE, SR., ET AL. *v.* GUSTAF T. APPELBERG ET AL.
(14995)

O'Connell, Schaller and Hennessy, Js.

Argued November 14, 1996—officially released February 18, 1997

*Stanton H. Lesser*, with whom was *Robert K. Lesser*, for the appellants (defendants).

*David M. Wallman*, with whom were *Donald R. Kiefer* and, on the brief, *David Kelso McConnell*, for the appellees (plaintiffs).

O'CONNELL, J. The defendants appeal from a judgment for the plaintiffs following a hearing before an attorney trial referee (attorney referee). The defendants claim that the trial court improperly (1) found the defendant Gustaf T. Appelberg personally liable, and (2) failed to grant a motion for mistrial and revocation of the reference to the attorney referee. We reverse the trial court's judgment.

The genesis of this case is the alleged breach of an agreement by which the plaintiffs sold a sign business to the defendants. A promissory note represented a portion of the purchase price and was a significant part of the plaintiffs' claim. The case was referred to an attorney referee who heard evidence and filed his report

with the court recommending judgment against the defendants. Both sides filed motions to correct the report. The attorney referee's rulings on these motions could materially change the outcome of the case. While the motions to correct were pending, the attorney referee contacted the defendants' counsel and asked permission to call a plaintiffs' witness to obtain a copy of a promissory note. The defendants' counsel denied permission, but the attorney referee nevertheless contacted the plaintiffs' witness ex parte and obtained a copy of the promissory note from him. It is not known what happened to the original of this note.[1] The attorney referee thereafter ruled on the motions to correct, and made findings relying on the note.

As a result of the attorney referee's ex parte communications with the plaintiffs' witness, the defendants moved for a mistrial and revocation of the reference to the attorney referee. The motion was heard by *Vertefeuille, J.*, who made the following findings: "While the motions to correct were pending, the attorney trial referee placed two phone calls to Attorney Martin O'Neill. O'Neill was the plaintiffs' former attorney who testified for the plaintiffs during the trial. The [attorney

---

[1] The parties filed a written stipulation with the trial court, the relevant paragraphs of which are as follows: "2. The Asset Purchase Agreement between the parties was submitted as Exhibit A-4 during the trial of this action. The Asset Purchase Agreement contained a copy of the Note as a schedule. Counsel for the parties cannot confirm whether this schedule reflects an executed copy of the Note. . . . 4. *The Note was not separately marked as an exhibit and introduced into evidence during the trial of this action,* which trial occurred before Attorney Trial Referee John Fracassini in July, 1992. The foregoing does not a constitute a stipulation by counsel for DeSalle that the Note was not properly before the Court during the trial of this action." (Emphasis added.)

Because Exhibit A-4 has been lost, this court could not examine the copy of the note contained therein to determine if it was an executed copy. Whether or not the substance of the note was before the court, it is clear from the stipulation that the original promissory note was not introduced as a separate exhibit before the attorney referee.

referee] made the phone calls in order to procure a copy of a promissory note which he believed was an exhibit at trial. The [attorney referee] made these calls without obtaining consent from the defendants. O'Neill did not return the first call because of concern about the ex parte nature of the call. However, when the [attorney referee] called O'Neill a second time, O'Neill took the call. The [attorney referee] asked O'Neill to telecopy to him a copy of the promissory note which gave rise to one of the plaintiffs' claims during the trial and O'Neill did so. The [attorney referee] shortly thereafter issued his ruling on the motion to correct."

Judge Vertefeuille concluded that "there is little question that the [attorney referee's] action in speaking with a trial witness and obtaining a copy of the promissory note from the witness created the appearance of impropriety in violation of Canon 2 of the Code of Judicial Conduct, which is also applicable to [attorney referees]. . . . The court finds no prejudice to the defendants from the incident in question. . . . Although the [attorney referee] acted improperly with the resulting appearance of impropriety, a mistrial under these circumstances is not warranted."[2]

The case then proceeded before the trial court, *Levin, J.*,[3] who, in a memorandum of decision, concluded that "this court concurs with Judge Vertefeuille's decision. The ex parte communication was improper and violated

[2] Canon 2 of the Code of Judicial Conduct provides in pertinent part: "A Judge Should Avoid Impropriety and the Appearance of Impropriety in All the Judge's Activities.

"A. A judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary. . . ."

[3] Judge Vertefeuille, the presiding judge of the civil court in the judicial district of Fairfield, entertained the motion for mistrial and revocation of reference to the attorney referee. Judge Levin was the trial court judge who accepted the attorney referee's report and rendered judgment thereon in favor of the plaintiff.

Cannon 3 A (4) of the Code of Judicial Conduct to which the attorney trial referee was bound. The transgression here was especially serious: The trier contacted a witness (and former party). However, receiving a copy of the promissory note, which was a product of the ex parte communication was harmless beyond a reasonable doubt."[4]

The Code of Judicial Conduct applies to attorney referees. *Rowan Construction Corp.* v. *Hassane*, 17 Conn. App. 71, 75–76, 549 A.2d 1085 (1988), aff'd, 213 Conn. 337, 567 A.2d 1210 (1990). Both trial court judges found that the attorney referee had committed a serious breach of the Code of Judicial Conduct resulting in an appearance of impropriety. They concluded, however, that because the defendants had failed to show harm or prejudice from this misconduct, they were not entitled to relief.

The issue, however, is not whether the misconduct proved harmful or caused prejudice to one of the parties. The issue is whether the misconduct would have

---

[4] Canon 3 of the Code of Judicial Conduct provides in pertinent part: "A Judge Should Perform the Duties of Judicial Office Impartially and Diligently. . . .

"A. Adjudicative Responsibilities. . . .

"(4) A judge should accord to every person who is legally interested in a proceeding, or that person's lawyer, full right to to be heard according to law. A judge shall not initiate, permit or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding except that:

"(a) Where circumstances require, ex parte communications for scheduling, administrative purposes or emergencies that do not deal with substantive matters or issues on the merits are authorized; provided:

"(i) the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication, and

"(ii) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication and allows an opportunity to respond. . . ."

The official commentary to Canon 3 A (4) provides that a "judge must not independently investigate facts in a case and must consider only the evidence presented."

caused an outside observer to question the judge's impartiality. *Dubaldo* v. *Dubaldo,* 14 Conn. App. 645, 649, 542 A.2d 750 (1988). We have in the past taken a strict stand on ex parte communications between a judge and a witness. Id.

In the present case, an outside observer would see an attorney referee, acting as a judge, with matters, i.e., the motions to correct the report, pending before him that could affect the outcome of the case. The outside observer also would learn that the attorney referee contacted the defendants' attorney to seek permission to communicate with a plaintiffs' witness and that permission was denied. The observer then would learn that the attorney referee nevertheless contacted the witness, who was also the plaintiffs' former attorney, and obtained a copy of a promissory note, which had not been admitted into evidence. The attorney referee thereafter ruled on the motions to correct relying on the note and recommending judgment for the plaintiffs. Confronted with this scenario, the outside observer would have reason to question the impartiality of the attorney referee.

Cases concerning whether a judge should disqualify himself are relevant and instructive. "The code sets forth an objective standard for disqualifications; Canon 3 (C) (1) provides: A judge should disqualify [himself] in a proceeding in which [his] impartiality might *reasonably* be questioned . . . . Any conduct that would lead a reasonable [person] knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be questioned is a basis for the judge's disqualification. Thus, an impropriety or the appearance of impropriety . . . that would reasonably lead one to question the judge's impartiality in a given proceeding clearly falls within the scope of the general standard . . . . The question is not whether the judge is impartial in fact. It is simply whether another, not knowing

whether or not the judge is actually impartial, might reasonably question his . . . impartiality, on the basis of all of the circumstances. . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Dubaldo* v. *Dubaldo,* supra, 14 Conn. App. 649.

"The question presented here is not whether the judge could render an impartial decision, but whether [the judge's] ex parte discussion with the witness . . . created in the minds of observers, particularly the defendant, an appearance of impropriety. We believe that, regardless of the judge's intent, [the judge's] action created the appearance of impropriety." Id., 650.

"Proof of actual bias is not required for disqualification. *Dacey* v. *Connecticut Bar Assn.,* 184 Conn. 21, 441 A.2d 49 (1981); *Krattenstein* v. *G. Fox & Co.,* [155 Conn. 609, 615, 236 A.2d 466 (1967)]. The appearance as well as the actuality of impartiality on the part of the trier is an essential ingredient of a fair trial." *Cameron* v. *Cameron,* 187 Conn. 163, 170, 444 A.2d 915 (1982). "We have embraced the rule that 'justice must satisfy the appearance of justice'; *Offutt* v. *United States,* 348 U.S. 11, 14, 75 S. Ct. 11, 99 L. Ed. 2d 11 (1954); even though this 'stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties.' *In re Murchison,* 349 U.S. 133, 136, 75 S. Ct. 623, 99 L. Ed. 942 (1955)." *Dubaldo* v. *Dubaldo,* supra, 14 Conn. App. 650–51.

In the situation described in *Dubaldo,* although there had been no showing of actual bias on the part of the trial judge, the facts and circumstances reasonably implicated the appearance of impropriety so that this court reversed the trial court's judgment for failure to grant a mistrial. "Impartiality on the part of a judge is a fundamental tenet of our system of jurisprudence. . . . The trial judge must be ever vigilant to consider

his conduct from the viewpoint not only of an unbiased observer, but also of the biased litigant who is desperately searching to find a flaw in the judge's conduct." *In re Shana M.*, 26 Conn. App. 414, 417, 600 A.2d 1385 (1992).

In support of their contention that prejudice must be demonstrated to support a motion for mistrial, the plaintiffs rely on *Fair* v. *Warden*, 211 Conn. 398, 559 A.2d 1094, cert. denied, 493 U.S. 981, 110 S. Ct. 512, 108 L. Ed. 2d 514 (1989); *Shelnitz* v. *Greenberg*, 200 Conn. 58, 79–81, 509 A.2d 1023 (1986); *State* v. *Festo*, 181 Conn. 254, 265, 435 A.2d 38 (1980); *Aillon* v. *State*, 168 Conn. 541, 547, 363 A.2d 49 (1975); *Izzo* v. *Crowley*, 157 Conn. 561, 565, 254 A.2d 904 (1969); and *Tukstas* v. *Saint Francis Hospital & Medical Center*, 23 Conn. App. 680, 583 A.2d 941 (1990). All of these cases are inapposite. None of those cases involves a motion for a mistrial based on conduct violating the Code of Judicial Conduct and thereby creating the appearance of impropriety.

The plaintiffs also argue that the ex parte communication was permitted by canon 3 A (4) (a),[5] which allows ex parte contacts for "scheduling, administrative purposes or emergencies that do not deal with substantive matters . . . ." We are not persuaded that the attorney referee's conduct came within any of these exceptions allowed by this canon.

We conclude that the attorney referee's ex parte communication with a witness for the purpose of obtaining a document that was not in evidence, even if the substance of its contents may have been before the attorney referee, violated the principles of impartiality underlying the Code of Judicial Conduct and irreparably tainted the judicial process. The trial court should have granted the defendants' motion for mistrial. In view of our disposition of the mistrial issue, we do not reach the defend-

---

[5] See footnote 4.

ants' claim concerning the merits of the trial court's decision.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.