ROBERT DESALLE, SR. *v.* GUSTAF T.
APPELBERG ET AL.
(AC 18774)

Schaller, Hennessy and Zarella, Js.

Argued April 5—officially released October 10, 2000

*David M. Wallman,* with whom were *David W. Rubin* and, on the brief, *Donald R. Kiefer,* for the appellant-appellee (plaintiff).

*Stanton H. Lesser,* for the appellees-appellants (named defendant et al.).

*Opinion*

SCHALLER, J. The plaintiff, Robert DeSalle, Sr., appeals and the defendants[1] Gustaf T. Appelberg (individual defendant) and Appelberg, Inc., now known as A-1 Sign Company, Inc. (corporate defendant),[2] cross appeal from the judgment of the trial court awarding the plaintiff damages against the defendants for breach of contract.[3] On appeal, the plaintiff claims that the court improperly interpreted the parties' contract in finding only the corporate defendant liable for a purchase money loan (note). The defendants claim that the court improperly awarded the plaintiff the full purchase price of the contract without reducing that amount by the damages caused by the plaintiff's breach of a covenant not to compete. We affirm the judgment of the trial court.

The following facts are relevant to our resolution of this appeal. In 1989, the plaintiff was the owner and operator of A-1 Sign Company, Inc. (A-1 Sign), a sign manufacturing business located in Bridgeport. After becoming interested in selling the business, the plaintiff engaged the services of a broker to assist in the sale. In October, 1989, the broker was contacted by the indi-

---

[1] The defendants are Gustaf T. Appelberg, A-1 Sign Company, Inc., David L. Quatrella and Martin J. O'Neill. Only the defendants Gustaf Appelberg and A-1 Sign Company, Inc., have appealed, and we refer in this opinion to those defendants as the defendants.

[2] A-1 Sign Company, Inc., is a Connecticut corporation wholly owned by the individual defendant.

[3] This appeal follows a retrial of the case after this court reversed the judgment and remanded the case for a new trial. See *DeSalle* v. *Appelberg,* 44 Conn. App. 323, 688 A.2d 1356 (1997).

vidual defendant in connection with the possible purchase of the plaintiff's business. From October, 1989, to May, 1990, the individual defendant and others considered and evaluated the purchase of the plaintiff's business for $450,000. The individual defendant was reluctant because he did not believe that the sales level demanded a purchase price of $450,000. After reviewing numerous materials provided by the plaintiff, the individual defendant was satisfied that the business could produce annual gross sales in the area of $600,000. Thereafter, on May 21, 1990, the parties entered into an asset purchase agreement.

The final purchase price for the plaintiff's business was in the amount of $450,000 payable as follows: (1) $7000 at the signing of the agreement; (2) $63,000 to be paid at the time of the closing; (3) "350,000 on the date of the closing by the way of a purchase money loan from Seller to Buyer";[4] and (4) $30,000, without interest, payable in four quarterly installments commencing on September 1, 1990.

The agreement contained a covenant not to compete by the plaintiff. The agreement also contained an allocation of the purchase price allocating a value of $300,000 for the covenant not to compete. The agreement was made between the corporate defendant and the plaintiff. At the time the documents were signed, the plaintiff also executed an employment agreement and an indemnification agreement. The assets of A-1 Sign were transferred to the corporate defendant, which thereafter changed its name to A-1 Sign Company, Inc.

---

[4] The agreement further provided that "[s]aid loan shall be evidenced by a promissory note . . . and shall be secured by a pledge of stock in E-L, Technologies, Inc., owned by [the individual defendant]." The promissory note referred to in the agreement was executed by the individual defendant in his capacity as president of the corporate defendant. There is no promissory note executed by the individual defendant in his individual capacity.

The plaintiff received payments from the defendants at or before the closing in the amounts of $7000 and $63,000. The defendants, however, failed to pay the balance of the $380,000 as provided for in the contract.[5]

The plaintiff brought this action against the defendants alleging, inter alia, breach of contract and failure to pay a promissory note. After a trial to the court, the court found the corporate defendant liable on the promissory note. The court also found both the corporate and individual defendants liable for the quarterly payments in the amount of $30,000. The plaintiff has appealed from this judgment, and the defendants have cross appealed. Additional facts will be set forth as necessary.

I

The plaintiff claims that the court improperly interpreted the parties' contract in finding only the corporate defendant liable on the note. We disagree.

The issue of a defendant's liability ordinarily involves a mixed question of fact and law for the trier to determine. In this case, however, the issue at hand presents us with a challenge to the factual basis of the trial court's decision. See *Shetucket Plumbing Supply, Inc.* v. *Processes, Inc.*, 3 Conn. App. 504, 505–506, 490 A.2d 93 (1985). "On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. . . . This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and

---

[5] Both parties agreed that the defendants failed to make payments called for in the asset purchase agreement except for the first interest payment provided for in the promissory note. The plaintiff claimed that the defendants breached the agreement because the first quarterly payment of $7500 due on September 1, 1990, was not made. The defendants claimed, and the trial court found, that the parties agreed to defer the September 1, 1990 payment until December, 1990.

logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Citation omitted.) *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

In his amended complaint, the plaintiff alleges, inter alia, breach of contract against the defendants. The plaintiff contends that the corporate defendant *and* the individual defendant are both liable on the note for the purchase price in the agreement.[6] The crux of the plaintiff's claim is that the language of the contract itself imposes liability on the individual defendant for the note. The plaintiff asserts that the individual defendant is "specifically defined as a 'Buyer' in the contract and he executed the contract individually." Next, the plaintiff notes that "[a]t [the] closing, both parties [agreed] to a 'purchase money loan' from 'Seller' to 'Buyer.' " The plaintiff therefore concludes that "if those provisions of the agreement are to be given effect, it is apparent that [the individual defendant], as well as [the corporate defendant], both are liable for the entire balance of the purchase price payable after the closing, both the $350,000 [note] as well as the unsecured $30,000 *contract balance." The plaintiff's line of reasoning is unpersuasive.

---

[6] Count one of the plaintiff's amended complaint alleges liability against the defendants for breach of contract in failing to make interest and quarterly payments. Although count one does not expressly assert that the individual defendant is liable for the purchase price, i.e., for his failure to pay on the promissory note, the court stated that "[t]he procedural history of the case including the proceedings before the attorney trial referee, who previously tried this case, and subsequent proceedings clearly indicate that the plaintiff is attempting to claim that the individual defendant is liable for the purchase price."

General Statutes § 42a-3-401 (a) provides in relevant part: "A person is not liable on an instrument unless (i) the person signed the instrument . . . ." The trial court specifically found that the note was signed by "Gustaf T. Appelberg in his capacity as president and [contained] *no signature nor indication of personal liability on the individual defendant* other than the stock pledge agreement." (Emphasis added.) Furthermore, under the agreement, the defendants satisfied their obligation by producing the note at the closing. On the whole record, the conclusions of the trial court challenged here are legally and logically correct, and the facts set out in the court's memorandum of decision find ample support in the evidence. We, therefore, conclude that the plaintiff's claim must fail.

## II

The defendants claim that the court improperly awarded the plaintiff the full purchase price of the contract without reducing that amount by the damages caused by the plaintiff's breach of a covenant not to compete. We disagree.

Subsequent to the sale of the assets, problems arose between the respective parties. The parties agreed that the plaintiff would not continue to work for the defendants after October, 1990. The parties, however, were in dispute as to when in October, 1990, the plaintiff's employment would end and as to the circumstances giving rise to that event. The plaintiff alleged that the defendants told him that the company could not afford to pay him and that he should see his lawyer. The defendants claimed, on the other hand, that the plaintiff failed to return to work and, therefore, breached the employment agreement.[7] The defendants further

[7] The defendants claim that after a meeting in September, 1990, in which there was an agreement to postpone the quarterly payment until December, 1990, the plaintiff and a representative of the defendants met at a diner where certain sums of money owed to the plaintiff were paid to him. It is after this meeting, the defendants claim, that the plaintiff never returned to work.

alleged that the plaintiff began competing with the defendants in breach of the covenant not to compete.

The defendants claim that the court improperly awarded the plaintiff the full purchase price for the business, which included $300,000 for the covenant not to compete, while allowing the plaintiff to keep profits obtained from his breach of the covenant. Therefore, the defendants claim that the court's decision actually awards the plaintiff a double benefit.

The court made specific findings regarding this matter. The court found that there are certain facts that indicate that the plaintiff continued to work for the defendants after the September, 1990 meeting and the subsequent meeting at a diner. See footnote 7. Accordingly, the court found that the defendants "terminated the plaintiff's employment in the latter part of October, 1990, and therefore the failure of the plaintiff to continue working *was not a breach of the employment agreement.*" (Emphasis added.) Moreover, the court found that there was no evidence "sufficient to demonstrate that the plaintiff violated the noncompetition provisions of the agreement until after his employment was terminated and at a time when interest payments were not being made pursuant to the note and quarterly installments called for in the agreement had not been paid."

On the whole record, the conclusions challenged here are legally and logically correct, and the facts set out in the court's memorandum of decision find ample support in the evidence. We, therefore, conclude that the court's conclusions must stand.

The judgment is affirmed.

In this opinion the other judges concurred.