## STATE OF CONNECTICUT *v.* JAMES LEONARD
## (10653)

DUPONT, C. J., HEIMAN and SCHALLER, Js.

Argued February 18—decision released May 4, 1993

*Susan M. Hankins,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Mary H. Lesser,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Carl Taylor,* assistant state's attorney, for the appellee (state).

HEIMAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of one count of possession of a narcotic substance in violation of General Statutes § 21a-279 (a),[1] one count of assault on a police officer in violation of General Statutes § 53a-167c (a) (1),[2] and three counts of interfering with

[1] General Statutes § 21a-279 provides in pertinent part: "(a) Any person who possesses or has under his control any quantity of any narcotic substance . . . may be imprisoned . . . or be fined . . . or be both fined and imprisoned . . . ."

[2] General Statutes § 53a-167c provides in pertinent part: "(a) A person is guilty of assault of a peace officer . . . when, with intent to prevent

an officer in violation of General Statutes § 53a-167a.[3] The defendant was acquitted by the jury of three counts of assault on a police officer and one count of interfering with a police officer. Subsequently, the defendant entered a plea of nolo contendere to a charge of being a persistent serious felony offender in violation of General Statutes § 53a-40 (b). On appeal, the defendant asserts that the trial court improperly (1) denied his motion to suppress evidence seized in violation of his state and federal constitutional rights and precluded him from cross-examining a police officer concerning the reliability of the confidential informant and the basis of the informant's information, (2) denied his motion for a new trial on the basis of juror misconduct and the jury's exposure to extrinsic evidence, (3) denied him access to police personnel files to show bias, lack of credibility, and prior history of the use of excessive force on the part of certain witnesses, thereby also denying him his constitutional right to confrontation and to present a defense, and (4) charged the jury on the issues of reasonable doubt and the presumption of innocence. We disagree and affirm the judgment of the trial court.

The jury reasonably could have found the following facts. During the afternoon and early evening hours of July 28, 1990, Detective Daniel Phillips, an eleven year member of the New Britain police department and another New Britain police officer, Alcides Morales, were assigned to a special squad involved in combating narcotics and drug use. Both officers were in full police uniform, including caps, badges and shoulder patches.

During the course of their afternoon patrol, a confidential informant told Phillips that two black males,

a reasonably identifiable peace officer . . . from performing his duty, and while such peace officer . . . is acting in performance of his duties, (1) he causes physical injury to such peace officer . . . ."

[3] General Statutes § 53a-167a (a) provides: "A person is guilty of interfering with an officer when he obstructs, resists, hinders or endangers any peace officer or fireman in the performance of his duties."

one of whom was the defendant, James Leonard, were coming back to New Britain from Hartford to a six-family dwelling on Silver Street with a large quantity of heroin, and that the defendant would be driving a black Ford Taurus.[4] Phillips testified that the informant was reliable. The officers informed their supervisor, Captain Robert Remillard, of the information they had received.

Remillard and his partner, William Chute, both in full uniform, went to the Silver Street location where they observed two black males, one of whom was the defendant, approach and enter a parked, black Ford Taurus. The defendant had a set of keys with which he unlocked the car. Upon entering the car, he rolled down a window and started the motor.

As soon as the motor caught, Remillard and Chute approached the vehicle on foot. Before the officers reached the car, the defendant shut off the motor and he and the other individual exited the vehicle. Chute approached the driver's side, where the defendant was standing, and Remillard approached the passenger side of the car. Chute asked the defendant if he owned the car and the defendant responded that he did not. Chute asked the defendant if he knew who did own the car and the defendant responded that he did not. Chute then asked the defendant if he had a driver's license and the defendant responded that he did not. Chute then asked why he had the keys to the car if he did not have a license or know who owned the car. The defendant threw the keys into the car and stated, "I don't know what you're talking about. I don't have any keys." When Chute looked into the car to see where the keys

[4] Outside of the jury's presence the court asked whether the confidential informant relayed the information in Detective Phillips' presence. Phillips responded that the informant was in his presence when he relayed the information.

had landed, he noticed a brown paper bag sticking halfway out from under the driver's seat.

Phillips and Morales then arrived at the scene. As Chute asked the defendant about the bag, the defendant became very nervous, his hands began to shake, and he started yelling that if the officer wanted to see what was in the bag, he would show him. The defendant reached into the vehicle, removed the bag from beneath the driver's seat, and brought it to the front of the car, placing it on the hood. Appearing to be about to open the bag, he suddenly grabbed it and fled. Morales and Chute pursued the defendant and ordered him to stop. Approximately seventy-five feet from the vehicle, the officers tackled the defendant. The defendant resisted and struck Phillips numerous times in the head and chest. The defendant broke free and his shirt was torn by Phillips who tried to hold on to him. He ran behind a building and attempted to climb a fence. Phillips grabbed his left leg and groin. The defendant kicked Phillips' head and shoulder. The defendant threw the bag onto a roof near the fence. Phillips and the other officers sprayed the defendant with capstun, a form of mace, and pulled him from the fence. Morales kept watch over the bag until a fire ladder could be brought to the scene to enable the officers to retrieve it. Remillard retrieved the bag and examined its contents.

After the police arrested the defendant and advised him of his rights, the defendant volunteered that he did not know why he was being arrested and that the drugs and money were not his. Phillips examined the contents of the bag at the police station. In the bag, the police found money and a plastic bag containing white powder and forty-five bags labeled "miracle" containing white powder. A test conducted at the state toxicology laboratory disclosed that the white powder in

the plastic bag was cocaine and that the forty-five bags contained heroin.[5]

The jury found the defendant guilty of one count of possession of a narcotic substance, one count of assault of a police officer, and three counts of interfering with an officer. The defendant pleaded nolo contendere to being a persistent felony offender. The trial court sentenced the defendant to ten years. This appeal ensued.

I

The defendant asserts that the trial court improperly denied his motion to suppress evidence seized in violation of his state and federal constitutional rights. He also asserts that the court improperly precluded him from cross-examining one of the peace officers concerning the confidential informant's reliability and the basis of the informant's information. We disagree.

A

Additional information is necessary to resolve the defendant's claims related to the motion to suppress. At the suppression hearing, the parties agreed that the only evidence necessary to a decision on the motion consisted of three police reports and the testimony of Phillips. In reaching its decision to deny the motion, the court noted, "I do not think that it's a close question in this particular case. The informant's information, coupled with the presence of the defendant and the other individual at the car at the time indicated by the informant, constituted a reasonable basis for further investigation." When describing the encounter between the police and the defendant outside of the defendant's car, the court found that "[t]here is no evidence of any arrest. . . . There was no gun used . . . and he was not put in the police car. He was free to roam the car

---

[5] Additional facts will be set forth where they are relevant to each issue.

and instead reaches in and grabs the bag and eventually runs. This is certainly arguable, in any event, for investigative purposes. Of course, that does not necessarily constitute an arrest. There was a short intervention with the police, and, thereafter, the defendant was up and running with the drugs." In response to the defendant's claim that the evidence in the bag should be suppressed because it was unlawfully seized, the court responded: "Anyone, including the police could have seized [the bag that contained the drugs]. There is no expectation of privacy at that point." The defendant took an exception to the court's refusal to suppress the evidence.

Our citizens may be afforded greater protections and rights under our state constitution than under the federal constitution in matters involving searches and seizures. *State* v. *Oquendo,* 223 Conn. 635, 613 A.2d 1300 (1992); *State* v. *Miller,* 29 Conn. App. 207, 614 A.2d 1229, cert. granted, 224 Conn. 914, 915, 617 A.2d 170 (1992). Under our state constitution, a person is seized when "by means of physical force or a show of authority, his freedom of movement is restrained." (Internal quotation marks omitted.) *State* v. *Oquendo,* supra, 647. Our Supreme Court has adopted this standard from *United States* v. *Mendenhall,* 446 U.S. 544, 100 S. Ct. 1870, 64 L. Ed. 2d 487 (1980), rejecting the federal standard set forth in *California* v. *Hodari D.,* 499 U.S. 621, 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991). *State* v. *Oquendo,* supra, 652. Our Supreme Court has stated that in determining whether a seizure has occurred, so as to invoke the protections of our state constitution, a court is to consider whether "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." (Internal quotation marks omitted.) *State* v. *Oquendo,* supra, 647.

The defendant claims that at the moment the police approached the defendant standing outside the car, he was seized. He asserts that the mere approach of the uniformed officers was such a show of authority that his freedom of movement was restrained. The defendant thus asserts that he was seized when he was detained for an investigatory stop without proper justification.[6]

While we note that not all exchanges between the police and private citizens on the street implicate the fourth amendment; see *Terry* v. *Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); an investigatory stop, however, is a seizure that implicates a party's fourth amendment rights. Id.[7] We will assume, as did our Supreme Court in *State* v. *Cofield,* 220 Conn. 38, 46, 595 A.2d 1349 (1991), that as a threshold matter the defendant was seized for the purpose of an investigative detention at some point before he discarded the contraband, and that his rights under the fourth and fourteenth amendments[8] were thus implicated.[9]

---

[6] The defendant essentially argues that the police officers conducted an investigatory *Terry* stop when they approached him in the car. *Terry* v. *Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). He asserts that the trial court improperly found that the confidential informant's tip provided the officers with reasonable and articulable suspicion sufficient to stop the defendant. The defendant asserts that without such justification for the stop, the warrantless search and seizure of the bag was the fruit of the poisonous tree.

[7] In *State* v. *Lamme,* 216 Conn. 172, 579 A.2d 484 (1990), our Supreme Court held that *Terry* v. *Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), is the law governing prearrest detentions under the Connecticut constitution. See *State* v. *Cofield,* 220 Conn. 38, 45 n.6, 595 A.2d 1349 (1991).

[8] The fourth amendment to the United States constitution, made applicable to the states through the due process clause of the fourteenth amendment in *Wolf* v. *Colorado,* 338 U.S. 25, 28, 69 S. Ct. 1359, 93 L. Ed. 2d 1782 (1949), provides in pertinent part: " 'The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . .' " *State* v. *Cofield,* 220 Conn. 38, 46 n.7, 595 A.2d 1349 (1991).

[9] The state asserts that no seizure occurred until the police ordered the defendant to stop as he fled from the car.

The only remaining question is whether the police officers had sufficient justification to warrant the detention.

To justify an investigative stop, the police must be able to point to specific and articulable facts and the inferences that can be drawn therefrom to establish that the intrusion was reasonably warranted. *Terry* v. *Ohio, supra,* 21; *State* v. *Cofield, supra,* 45. "In evaluating the validity of [an investigative] stop, courts consider whether, in light of 'the totality of the circumstances—the whole picture,' the police officer had 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.' " *State* v. *Cofield, supra,* quoting *United States* v. *Cortez,* 449 U.S. 411, 417–18, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981). "When . . . an officer's decision to detain a suspect briefly is based on information received from an informant, the task of the reviewing court is akin to a probable cause determination." *State* v. *Cofield, supra.* To determine the existence of such probable cause, our Supreme Court has adopted the totality of the circumstances approach of *Illinois* v. *Gates,* 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527.[10] *State* v. *Cofield, supra.* The informant's veracity, reliability and basis of knowledge remain highly relevant in this determination. Id., 46. *"These factors are also relevant in the reasonable suspicion context, although allowance must be made in applying them for the lesser showing required to meet that standard."* (Emphasis added.) *Alabama* v. *White,* 496 U.S. 325, 328–29, 110 S. Ct. 2412, 110 L. Ed. 2d 301 (1990); *State* v. *Cofield, supra.* "[A] deficiency in one [factor] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of

---

[10] In *Illinois* v. *Gates,* 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983), the Supreme Court held that a partially corroborated anonymous tip provided the police with probable cause to obtain a search warrant.

reliability" such as corroboration by the police. *Illinois* v. *Gates,* supra, 233. The police, however, are not required to corroborate all of the information provided by a confidential informant. See id., 246; *State* v. *Cofield,* supra, 47. Partial corroboration may suffice. *State* v. *Cofield,* supra, 47–48.

On the basis of the totality of the circumstances, the trial court properly concluded that the police had a reasonable and articulable suspicion to detain the defendant for an investigative stop. The trial court found that the police had received reliable information from a confidential informant. This informant had provided the officer with information six previous times that eventually resulted in six convictions. The confidential informant told the police that they would find two black men in a black Taurus that would be parked at a certain location. The police corroborated this information. "Although '[a]ny one of these factors is not by itself proof of illegal conduct,' taken together 'they amount to reasonable suspicion.'" Id., 47, quoting *United States* v. *Sokolow,* 490 U.S. 1, 9, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989). Viewing the totality of the circumstances in this case, we conclude that the informant supplied the officers with information that had sufficient indicia of reliability and corresponded adequately with their observations in the parking lot to provide them with a reasonable and articulable suspicion sufficient to justify approaching the defendant's car for further investigation. *State* v. *Cofield,* supra. We hold that the trial court properly concluded that the information provided by the informant, as corroborated by the officers' observations, was sufficient to raise a reasonable and articulable suspicion to justify an investigative detention. See id., 49.[11] The contents of the bag

[11] Moreover, the defendant's suspicious answers concerning ownership of the car and his lack of a license to drive, even though he had started the motor, his action of throwing the keys into the car, his nervousness,

were not the fruit of an unlawful seizure of the defendant. See id., 42.

## B

In a related claim the defendant, while conceding that he never made a claim at the suppression hearing that the police were required to obtain a warrant to inspect the contents of the bag once it had been seized,[12] now seeks review under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), and *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989).

To prevail on appeal on a claim of constitutional error that has not been adequately preserved at trial, the defendant must meet all of the following conditions: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding,* supra, 239–40. "We are free, however, to dispose of the claim by focusing on the condition that appears most relevant under the circumstances of the case."

his boisterous behavior, and the presence of a bag sticking out from under the driver's seat, taken together, all provided the police with additional reasonable and articulable facts by which the police could conduct a *Terry* stop.

[12] We note that not all lawful seizures give the police license to conduct warrantless searches. This case is unlike *State* v. *Miller,* 29 Conn. App. 207, 614 A.2d 1229, cert. granted, 224 Conn. 914, 915, 617 A.2d 170 (1992), in which we held that a lawful seizure of an automobile does not permit the warrantless search of the trunk. In *Miller,* the defendant had an expectation of privacy, albeit diminished, in his automobile. Here, the defendant had no expectation of privacy in the bag and its contents when he threw it on the roof of a building, out of his reach. See *State* v. *Mooney,* 218 Conn. 85, 108–109, 588 A.2d 145, cert. denied,     U.S.    , 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991).

*State* v. *Andrews,* 29 Conn. App. 533, 537, 616 A.2d 1148 (1992), cert. denied, 224 Conn. 924, 618 A.2d 531 (1993).

On the basis of our analysis, the defendant has failed to demonstrate that a constitutional violation clearly exists and clearly deprived him of a fair trial, and thus, we decline to afford review of the unpreserved claim. Id.

C

Additional information is necessary to resolve the defendant's remaining claim concerning the motion to suppress, that he was improperly precluded from cross-examining the police officer concerning the confidential informant's reliability and the basis of the informant's information. During the suppression hearing, Phillips testified on direct examination that he received information from a reliable confidential informant. This informant had provided the officer with information six times in the past that resulted in convictions in all six instances. He also testified that a period of fifteen to twenty minutes elapsed between the time he received the information and the time he encountered the defendant.

On cross-examination, the defendant asked the officer the confidential informant's name. The state objected to this question and the court sustained the objection. The defendant was then permitted to ask whether the informant had a criminal record, whether he faced any criminal charges at the time that Phillips received the information, and whether there was any type of bargain or agreement made with the informant. Despite the defendant's claim that the information would be relevant as to the informant's reliability, the trial court sustained objections to questions about whether the informant had a drug habit or had gone through a drug treatment program. The defendant was

permitted, however, to ask if at the time Phillips received the information, the informant was under the influence of drugs. On the basis of relevance, the defendant was also not permitted to ask why the informant gave Phillips the information, but was permitted to ask if Phillips knew of the informant's motive. Phillips testified that the informant knew the defendant's identity and that the informant did not mention whether he had ever seen the defendant involved in a drug transaction. Rejecting the defendant's claim that the question related to the informant's credibility, the court refused to permit the defendant to ask Phillips how the informant knew that a drug transaction was about to take place. The court stated that no evidence had been offered about a drug transaction, but rather the evidence disclosed only that the informant said that the defendant was transporting drugs.

We disagree with the defendant that the trial court deprived him of the right to delve into "highly relevant" areas that would help him dispute the informant's credibility and reliability. Our standard of review regarding challenges to a trial court's evidentiary rulings is that these rulings will be overturned on appeal only " 'where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice.' " *State* v. *Alvarez,* 216 Conn. 301, 306, 579 A.2d 515 (1990); *State* v. *Maxwell,* 29 Conn. App. 704, 716, 618 A.2d 43 (1992), cert. denied, 225 Conn. 904, 621 A.2d 287 (1993). In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. *State* v. *Beckenbach,* 198 Conn. 43, 47, 501 A.2d 752 (1985); *State* v. *Anderson,* 28 Conn. App. 833, 847, 614 A.2d 438, cert. granted, 224 Conn. 908, 615 A.2d 1048 (1992). We will reverse the trial court's ruling only if it could not reasonably conclude as it did. When a constitutional

violation is not at issue, the defendant bears the burden of demonstrating the harmfulness of the court's ruling by proving that it is more probable than not that it affected the result of the hearing. See *State* v. *Tatum*, 219 Conn. 721, 738, 595 A.2d 322 (1991).

The defendant has not demonstrated that the trial court abused its discretion in making evidentiary rulings preventing him from asking certain questions. While the defendant claims that these questions relate to credibility and reliability, we conclude that the trial court could have properly determined that they were not relevant to the hearing before it. For example, the defendant's questions dealing with how the informant knew of drug transactions are irrelevant to the information that the informant revealed. The informant mentioned to the officer only that drugs were to be transported and not that a transaction was going to take place. "[W]e consider the nature of the excluded inquiry, whether the field of inquiry was adequately covered by other questions that were allowed, and the overall quality of cross-examination viewed in relation to the issues actually litigated at trial." (Internal quotation marks omitted.) *State* v. *Lee*, 30 Conn. App. 470, 486, 620 A.2d 1303 (1993). The defendant was allowed to question the officer sufficiently about the informant's criminal record and motives for relaying the information. The court afforded him an adequate opportunity to cross-examine the officer concerning the informant's reliability and credibility.

The trial court properly denied the defendant's motion to suppress.

II

The defendant also asserts that the trial court improperly denied his motion for a new trial on the basis of juror misconduct and exposure to extrinsic evidence. The defendant asserts that the alleged juror miscon-

duct occurred in two different ways: (1) the jurors engaged in unauthorized and premature deliberations on the evidence and its relationship to extrinsic matters and (2) their impartiality was impaired by their exposure to extrinsic evidence. The defendant further posits that the trial court's inquiry into the juror misconduct was inadequate and its finding that the alleged misconduct did not taint the jury was erroneous. As a result of the alleged misconduct, the defendant claims that he was deprived of his constitutional rights to due process and a fair trial before an impartial jury. We disagree.

Additional facts are necessary to resolve this issue. Following the verdict, the foreperson approached the trial judge and presented him with a newspaper article that she had clipped from the New York Times.[13] She stated to him that she and another juror thought the case described in the newspaper was interesting and similar to this case. They thought that the judge might be interested in reading the article. The court reported the incident to counsel, placed the disclosure on the record, and continued the matter to permit the defendant to review the article. The defendant moved for a new trial and requested an evidentiary hearing.

At the evidentiary hearing, the foreperson was the only witness to testify.[14] The court acknowledged and the defendant agreed that under *State* v. *Asherman,* 193 Conn. 695, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985),

---

[13] The New York Times article was entitled "Fleeing Suspect's Discards Can Convict Court Says." The subheadline read "Justices hold a chase is not a seizure, as the Constitution goes." A photograph of Justice Scalia of the United States Supreme Court accompanied the article. The article discussed the Supreme Court's decision in *California* v. *Hodari D.,* 499 U.S. 621, 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991).

[14] The defendant indicated that the foreperson was the only juror who needed to testify. The court left open the possibility that other jurors might be questioned.

inquiry could not be made into the mental processes of the jurors, but could explore the use of the article and whether it played any part in the jury's decision.

During the trial, the court did not prohibit the jurors from reading newspaper articles not related to the case before them. The foreperson testified that prior to jury deliberations, she read the New York Times article and showed it to another juror. The other juror suggested that the foreperson clip the article and give it to the judge after the trial. The foreperson also testified that other jurors had the opportunity to read the article, but that she was unsure whether the others had read it or had any interest in it. She also stated that one of the jurors may have remarked that the United States Supreme Court and a "small" Connecticut court were dealing with cases that had some things in common. After the article appeared, the only other time it was mentioned was by another juror who stated that the Hartford Courant had a similar article that was easier to understand.

No newspapers were in the jury room during deliberations. The foreperson did not bring the Times article with her during the first day of deliberations. Although she did have the article in her purse the second day, the foreperson did not remove it or discuss it during the deliberations. The foreperson also testified that the jurors took seriously the trial court's instructions made repeatedly throughout the trial that they were to consider only evidence that was introduced before them in court.

After the hearing, the trial court in its memorandum of decision found that no evidence existed that the newspaper article influenced the jury in any way. The court also stated that it carefully examined the content of the article, and that the actual substance of the article dealt primarily with the United States Supreme

Court's conclusion that a police chase and an order to stop does not constitute a seizure requiring the application of the fourth amendment standards as a predicate to the utilization of discarded evidence in a subsequent criminal prosecution. The court also stated that the article discussed the legal and constitutional issues involved in that case. It then noted that those issues were not involved in the jury charge. In the court's view, the article in no way conflicted with the jury charge. On the basis of the foreperson's testimony and the content of the article, the court found no evidence that the jury disregarded its instructions, discussed the article during deliberations, or premised its verdict on the analysis set forth in the article. The court then found beyond a reasonable doubt that the defendant was not prejudiced and that his due process rights to a fair trial were not abridged.

It is well established that a defendant's right to a jury trial guarantees him that it will be conducted fairly by a panel of impartial jurors; *State* v. *Ziel,* 197 Conn. 60, 64, 495 A.2d 1050 (1985); *State* v. *Migliaro,* 28 Conn. App. 388, 395, 611 A.2d 422 (1992); and that the jury will decide the case solely on the basis of the evidence and arguments presented before it after proper instructions on the law by the court. *State* v. *Rodriguez,* 210 Conn. 315, 325, 554 A.2d 1080 (1989). Where it appears during the course of a trial that the jury panel may have been exposed to prejudicial extrinsic evidence, the trial court must conduct, as the court did here, an investigation to determine whether jury misconduct occurred. See *State* v. *Migliaro,* supra, 396. "There is no magic formula that the trial court must follow in conducting this inquiry. Rather, it must use whatever inquisitorial tools are necessary and appropriate to determine whether there was a 'reasonable possibility' of prejudice." (Internal quotation marks omitted.) Id.

The trial court assesses the credibility of witnesses and the weight to be accorded their testimony in resolving matters of potential jury misconduct. *Speed* v. *DeLibero,* 215 Conn. 308, 314, 575 A.2d 1021 (1990); *State* v. *Rodriguez,* supra, 330; *McNamee* v. *Woodbury Congregation of Jehovah's Witnesses,* 194 Conn. 645, 648, 484 A.2d 940 (1984). The trial judge is in the best position and is "uniquely qualified to appraise the probable effect of information on the jury, the materiality of the extraneous material, and its prejudicial nature." (Internal quotation marks omitted.) *State* v. *Rodriguez,* supra, 331; *Speed* v. *DeLibero,* supra. Where the trial court had the opportunity to observe jurors and to examine them at a posttrial hearing, we will not question that court's findings absent a showing of clear error. *Klingeman* v. *MacKay,* 25 Conn. App. 217, 221, 594 A.2d 18, cert. denied, 220 Conn. 910, 597 A.2d 333 (1991).

The trial court enjoys broad discretion in determining whether jury misconduct occurred and if that misconduct prejudiced the defendant. *Speed* v. *DeLibero,* supra, 315; *State* v. *McCall,* 187 Conn. 73, 77, 444 A.2d 896 (1982); *State* v. *Migliaro,* supra. The trial court's decision as to the fairness of the trial must be afforded great weight. *State* v. *McCall,* supra. The court must, however, have some factual basis on which to exercise that discretion. *State* v. *Migliaro,* supra.

Contrary to the defendant's claims, the trial court conducted an adequate hearing to determine whether the defendant's rights were jeopardized. The trial court had broad discretion to decide the scope and extent of inquiry. *State* v. *Rodriguez,* supra, 326. On appeal, the defendant asserts that the trial court's inquiry was inadequate. Yet, at the hearing, the defendant agreed that only the foreperson needed to be examined. After the testimony, the defendant did not request that other jurors testify, but, rather, rested his case. The defend-

ant has not demonstrated that the trial court abused its discretion in the scope of its inquiry. The defendant also has not demonstrated that the trial court abused its discretion by finding that there was no jury misconduct. On the basis of the foreperson's testimony and the content of the article, the trial court properly could have found that the article was not extrinsic evidence utilized by the jury. The article offered no new information concerning the defendant's case. The court also could have properly found that the jurors did not prematurely deliberate after reading the article. The court cautioned the jury on numerous occasions that the only evidence that they were to consider was that introduced during the trial. The foreperson testified that the jurors heeded that instruction. In the absence of evidence to the contrary, jurors are presumed to follow the court's instructions. *State* v. *Rouleau,* 204 Conn. 240, 254, 528 A.2d 343 (1987). We will not, on appeal, "speculate on what the jurors may have discussed and then speculate that the discussion probably prejudiced the [defendant]." *Speed* v. *DeLibero,* supra.

The trial court properly denied the defendant's motion for a new trial.

### III

The defendant claims that the trial court improperly declined to allow him access to police personnel files. By not having access to the files, the defendant asserts that he was denied his constitutional right to confront witnesses against him as guaranteed to him by the sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution.[15]

---

[15] The sixth amendment to the United States constitution provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."

Article first, § 8, of the Connecticut constitution provides in pertinent part: "In all criminal prosecutions, the accused shall have a right . . . to be confronted by the witnesses against him . . . ."

Additional facts are necessary to resolve this issue. The defendant subpoenaed the personnel files of the four police officers who testified and requested that the trial court conduct an in camera inspection to determine if any of the files revealed either a history of excessive force or anything relating to credibility or racial bias. The court conducted an in camera inspection and found nothing in Morales', Phillips' or Chute's files relevant to their credibility, or any complaints or actions taken against them regarding the use of excessive force, brutality or racial bias. The court found something in Remillard's file that might remotely bear on his credibility. The court, however, held that the information was not exculpatory and did not have sufficient probative value to outweigh the policy of confidentiality. In response, the defendant took an exception. The court sealed the files.

The court then provided the defendant with the opportunity to conduct further cross-examination of the officers or a voir dire. The defendant responded that he believed that Chute had been sued and wanted to know the name of the plaintiff in that action. The court reexamined Chute's file and found no evidence of the alleged action. The defendant later recalled Chute during the presentation of his case. Outside of the jury's presence, the defendant asked Chute if he had been sued. Chute testified that within the last five years he had been sued a number of times by people whom he had arrested, but that he had no judgments against him. He did state, however, that eight or nine years earlier, he had been sued and that case had resulted in a judgment against him. He provided the defendant with the plaintiffs' names. After the voir dire, the defendant stated that he would wait until the next morning to decide whether to rest his case. Without presenting any further evidence, the defendant rested his case the following day.

Confidential information in police personnel files that may be potentially relevant to a witness' credibility is protected by General Statutes § 1-19 (b) (2).[16] *State* v. *Januszewski,* 182 Conn. 142, 171, 172–73, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981); *State* v. *Moore,* 23 Conn. App. 479, 485–86, 581 A.2d 1071 (1990), cert. denied, 217 Conn. 802, 583 A.2d 132 (1991). That information can be disclosed only after the court has conducted an in camera inspection to determine if the defendant's need to examine the confidential information outweighs the public policy in favor of confidentiality. *State* v. *Januszewski,* supra; *State* v. *Moore,* supra, 486. The trial court should provide access to information in the personnel file only if it finds that that information is clearly material and relevant to the issue involved. *State* v. *Januszewski,* supra, 173. "The disclosure of such information must be carefully tailored to a legitimate and demonstrated need for such information in any given case." Id., 172. On the basis of a case-by-case determination and judicial experience, the trial court exercises discretion in deciding the temporal relevancy and remoteness of material sought. Id. "No criminal defendant has the right to conduct a general 'fishing expedition' into the personnel records of a police officer." Id.

We review claims that a court improperly denied access to police personnel files under an abuse of dis-

---

[16] General Statutes § 1-19 provides in pertinent part: "(a) Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to inspect such records promptly during regular office or business hours or to receive a copy of such records in accordance with the provisions of section 1-15. . . .

"(b) Nothing in sections 1-15, 1-18a, 1-19 to 1-19b, inclusive, and 1-21 to 1-21k, inclusive, shall be construed to require disclosure of . . . (2) personnel or medical files and similar files the disclosure of which would constitute an invasion of personal privacy . . . ."

cretion standard. Id., 172–73; *State* v. *Moore,* supra. To determine whether the trial court abused its discretion, this court must make every reasonable presumption in favor of the trial court's action. *Walton* v. *New Hartford,* 223 Conn. 155, 169, 612 A.2d 1153 (1992). The trial court's exercise of its discretion will be reversed only where the abuse of discretion is manifest or where injustice appears to have been done.

The defendant has failed to demonstrate that the trial court abused its discretion. While not permitting the defendant to examine the files, the court did in fact allow him to question the witness directly during voir dire to gain the information he sought concerning actions brought against the officers. The court found that no information was contained in three of the officers' files relevant to any of the areas that the defendant sought to probe during cross-examination. While finding some evidence remotely relevant in the fourth officer's file, the court found that the information was not exculpatory and lacked sufficient probative value to outweigh the policy of confidentiality. The defendant chose not to present additional evidence before the jury concerning actions brought against the officers. The trial court did not abuse its discretion in curtailing the defendant's access to the police personnel files and therefore did not violate the defendant's federal and state constitutional rights to confront witnesses against him.

### IV

The defendant further asserts that the trial court improperly charged the jury as to the meaning of reasonable doubt and the presumption of innocence, depriving him of his rights guaranteed by both the state and federal constitutions.[17] We do not agree.

[17] The defendant asserts that the following two statements made by the trial court in its charge about reasonable doubt misled the jury and vio-

The defendant concedes that this issue was not properly preserved before the trial court and seeks this court's review pursuant to the doctrine of *State* v. *Evans,* supra, and *State* v. *Golding,* supra.

The defendant cannot satisfy the third prong of *Golding,* that the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial. The court's instructions concerning reasonable doubt and the presumption of innocence are the same or similar to jury instructions that have been consistently approved by this court and by our Supreme Court. See, e.g., *State* v. *Stanley,* 223 Conn. 674, 695–96, 613 A.2d 788 (1992); *State* v. *Thomas,* 214 Conn. 118, 119–20, 570 A.2d 1123 (1990); *State* v. *Ray,* 30 Conn. App. 95, 105-106, 619 A.2d 469 (1993); *State* v. *Andrews,* supra, 537–38; but see *State* v. *Johnson,* 29 Conn. App. 584, 590, 617 A.2d 174 (1992), cert. granted, 224 Conn. 927, 619 A.2d 851 (1993) (certification granted as to whether the trial court's definition of a reasonable doubt as ''a doubt for which a valid reason may be assigned,'' was not reviewable, or if it was reviewable on its merits, was the instruction erroneous.)[18] When viewed in the context of the entire charge, the instructions challenged

lated his constitutional rights: (1) ''A reasonable doubt is a doubt for which a valid reason can be assigned.'' (2) ''If all of the evidence . . . produces in your minds a settled and abiding belief that you would be willing to act upon in matters of the highest importance relating to your own affairs, then in that event, you would be free from reasonable doubt; and you would declare the defendant to be guilty.''

The defendant also claims that the following two statements made by the trial court in its charge about the presumption of innocence misled the jury and violated his constitutional rights: (1) ''The presumption of innocence also requires that when you consider all of the evidence or the entire evidence and it is capable of two reasonable interpretations, one of which is consistent with innocence, you must adopt the interpretation consistent with innocence.'' (2) ''But you must keep in mind that those rules of law are made to protect the innocent and not the guilty.''

[18] While we note that our Supreme Court has granted certification concerning a similar instruction about reasonable doubt, our role is to apply the law as it currently exists.

for the first time on appeal did not lessen the state's burden to prove the defendant guilty beyond a reasonable doubt and did not dilute the defendant's presumption of innocence. *State* v. *Thomas,* supra, 119; *State* v. *Andrews,* supra, 538. Because the defendant was not deprived of a fundamental constitutional right, we decline to review the defendant's claims concerning the allegedly improper language used by the court in its instructions to the jury. *State* v. *Thomas,* supra, 120; *State* v. *Andrews,* supra, 539; but see *State* v. *Johnson,* supra.[19]

The judgment is affirmed.

In this opinion the other judges concurred.