## STATE OF CONNECTICUT *v.* LUIS M. OCASIO
## (AC 29039)

Gruendel, Robinson and Pellegrino, Js.

---

Argued November 12, 2008—officially released February 24, 2009

*Jason A. Hyne*, certified legal intern, with whom were *Timothy H. Everett*, special public defender, and *Randi Haraj-Sai*, certified legal intern, and, on the brief, *Nicholas Mindicino*, *Brian McCarthy*, *Jennifer Ayanna Butler* and *Elizabeth Letak*, certified legal interns, for the appellant (defendant).

*Rocco A. Chiarenza*, special deputy assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Jason Germain*, assistant state's attorney, for the appellee (state).

*Opinion*

ROBINSON, J. The defendant, Luis M. Ocasio, appeals from the judgment of conviction, rendered following his conditional plea of nolo contendere, to sale of narcotics by a person who is not drug-dependent in violation of General Statutes § 21a-278 (a).[1] The plea followed the trial court's denial of the defendant's motion to suppress. On appeal, the defendant claims

---

[1] The information charged the defendant with three counts; however, the state entered a nolle prosequi as to the first count of the information, which charged him with operation of a drug factory in violation of General Statutes § 21a-277 (c), and as to the third count, which charged him with a second count of sale of narcotics by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b).

that the court improperly denied the motion to suppress the evidence obtained following the investigative or *Terry* stop of his motor vehicle because the police officers did not possess a reasonable and articulable suspicion of criminal activity to justify the stop. See *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). We disagree and affirm the judgment of the trial court.

On January 26, 2007, the defendant filed a motion to suppress all evidence that had been obtained pursuant to the stop of his motor vehicle.[2] The court conducted an evidentiary hearing on the motion to suppress on February 7, 2007. At the conclusion of the hearing, the court found the following facts. On October 17, 2005, at approximately 3 p.m., Officer Brian Boutote of the Wolcott police department received a telephone call from one of his confidential informants. The confidential informant identified the defendant by name and stated that the defendant currently was packaging cocaine for sale at Greco Pizza on East Main Street in Waterbury. The informant described the defendant as a heavyset Hispanic man in his mid-thirties and also provided a precise description of the make, model, color and location of the defendant's motor vehicle. According to the informant, the defendant was expected to be leaving the restaurant shortly.

Boutote did not verify the information received or inquire into the source of the informant's knowledge; however, Boutote believed the informant to be reliable on the basis of past productive interactions. Boutote did not take notes on this conversation; rather, immediately after speaking with his informant, Boutote called Sergeant Robert Cizauskas of the Waterbury police department and relayed this tip via the telephone.

---

[2] The items sought to be suppressed included all physical evidence seized, any tests or experiments performed relative thereto, observations made by the police officers, any evidence gathered as a result of these searches and seizures and any testimony related thereto.

Cizauskas is a member of the vice and intelligence division of the Waterbury police department. Boutote relayed to Cizauskas the information received from his informant, including the defendant's name, physical description and a description of the defendant's vehicle. According to Cizauskas, Boutote informed him that the defendant would be leaving shortly with the cocaine in his motor vehicle. Upon receiving this information, Cizauskas and three additional police officers left immediately for the location provided by the informant. When they arrived several minutes later, the officers confirmed the location and description of the motor vehicle described by the informant. They also confirmed that the vehicle was registered to the defendant. Shortly thereafter, at 3:20 p.m., the officers observed the defendant exiting the restaurant empty-handed. His physical description matched that provided by Boutote's informant.

The officers followed the defendant as he drove away from the restaurant. The defendant did not engage in suspicious activity, but after he turned onto a less congested street, the officers activated the sirens on their vehicles and stopped the defendant's vehicle. Cizauskas observed the defendant moving around in his vehicle as the four officers approached. When Cizauskas approached the driver's side window, he asked the defendant to roll down his window and to identify himself. Cizauskas confirmed that the driver was the same man identified in the informant's tip and then observed a plastic bag containing a white substance on the driver's side floor. The packaging was consistent with typical packaging for cocaine, and a subsequent field test of the substance was positive for cocaine.

The defendant then was ordered to exit his vehicle and was placed under arrest. The subsequent patdown search of his person revealed three plastic bags in his front pocket. Two of the bags contained fifteen smaller

bags of cocaine and a piece of cardboard with writing typically used in drug transactions to describe the price and contents of the bags. The writing indicated "9 balls, 6-16s, 1350." According to Cizauskas, a "ball" referred to one-eighth of an ounce and "16" referred to one-sixteenth of an ounce whereas "1350" indicated the price of the bags. Additional contraband was found in the trunk of the defendant's vehicle and during the course of a subsequent search of the defendant's bedroom, located in the same building as Greco Pizza.

On the basis of these facts, the court concluded that the contents of the informant's tip received by Cizauskas was sufficient to establish a reasonable and articulable suspicion to justify the stop of the vehicle. In reaching this conclusion, the court determined that the collective knowledge of law enforcement entitled the Waterbury police officers "to utilize the reliability of Boutote's informant, as if that informant was their own, despite not knowing the informant's identity." The court also recognized that the tipster was well known to Boutote and had never provided bad, unreliable or untruthful information; in actuality, his past information had resulted in five arrests. Furthermore, all of the identifying information provided by the informant was corroborated by the police prior to the investigatory stop. Regarding the informant's basis of knowledge, the court concluded that "one may reasonably infer, given the confirmed accuracy of all the details provided by Boutote's informant and given the use of present tense, that the informant was in a position to observe [the defendant's] activities inside the pizza establishment." Additional facts will be set forth as necessary.

We begin by setting forth the applicable standard of review. "[O]ur standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of

the evidence and pleadings in the whole record . . . .
[When] the legal conclusions of the court are chal-
lenged, [our review is plenary, and] we must determine
whether they are legally and logically correct and
whether they find support in the facts set out in the
court's [ruling] . . . ." (Internal quotation marks omit-
ted.) *State* v. *Jones*, 281 Conn. 613, 654, 916 A.2d 17,
cert. denied, 552 U.S. 868, 128 S. Ct. 164, 169 L. Ed. 2d
112 (2007). "Because a trial court's determination of
the validity of a . . . search [or seizure] implicates a
defendant's constitutional rights . . . we engage in a
careful examination of the record to ensure that the
court's decision was supported by substantial evidence.
. . . However, [w]e [will] give great deference to the
findings of the trial court because of its function to
weigh and interpret the evidence before it and to pass
upon the credibility of witnesses." (Citation omitted;
internal quotation marks omitted.) *State* v. *Reynolds*,
264 Conn. 1, 43, 836 A.2d 224 (2003), cert. denied, 541
U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004).[3]

The defendant argues that the court improperly con-
cluded that the state established reasonable and articu-
lable suspicion to justify the investigatory stop of his
vehicle. Specifically, the defendant maintains that the
police unreasonably based their stop on an informant's
tip that (1) was vague and contained substantial ambigu-
ity that was not sufficiently corroborated, (2) failed to

[3] In his brief, the defendant argues that the entirety of his claim is entitled
to plenary review, including issues of credibility and the weighing of the
evidence. He argues that Connecticut jurisprudence has ignored the stan-
dards set forth in *Ornelas* v. *United States*, 517 U.S. 690, 116 S. Ct. 1657,
134 L. Ed. 2d 911 (1996); however, his argument is grounded in a misreading
of this authority. *Ornelas* states: "We therefore hold that as a general matter
determinations of reasonable suspicion and probable cause should be
reviewed *de novo* on appeal. Having said this, we hasten to point out that
a reviewing court should take care both to review findings of historical fact
only for clear error and to give due weight to inferences drawn from those
facts by resident judges and local law enforcement officers." Id., 699.

tie illegal activity to the defendant and (3) was unreliable. We disagree.

"Pursuant to *Terry* v. *Ohio*, [supra, 392 U.S. 1], a police officer has the authority, under the fourth amendment to the United States constitution, to stop the operator of a car if the officer has a reasonable and articulable suspicion that the operator has engaged in illegal conduct." *State* v. *Cyrus*, 111 Conn. App. 482, 483, 959 A.2d 1054 (2008). "Reasonable and articulable suspicion is an objective standard that focuses not on the actual state of mind of the police officer, but on whether a reasonable person, having the information available to and known by the police, would have had that level of suspicion. . . . The police officer's decision . . . must be based on more than a hunch or speculation. . . . In justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (Internal quotation marks omitted.) *State* v. *Hammond*, 257 Conn. 610, 617, 778 A.2d 108 (2001); see also *Terry* v. *Ohio*, supra, 21.

"In evaluating the validity of such a stop, courts consider whether, in light of the totality of the circumstances—the whole picture, the police officer had a particularized and objective basis for suspecting the particular person stopped of criminal activity. . . . When . . . an officer's decision to detain a suspect briefly is based on information received from an informant, the task of the reviewing court is akin to a probable cause determination [according to] the totality of the circumstances approach of *Illinois* v. *Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527, reh. denied, 463 U.S. 1237, 104 S. Ct. 33, 77 L. Ed. 2d 1453 (1983). . . . Just as . . . the informant's veracity, reliability,

and basis of knowledge [are] highly relevant [in a probable cause determination] [t]hese factors are also relevant in the reasonable suspicion context, although allowance must be made in applying them for the lesser showing required to meet that standard. *Alabama* v. *White*, [496 U.S. 325, 328–29, 110 S. Ct. 2412, 110 L. Ed. 2d 301 (1990)]." (Citations omitted; internal quotation marks omitted.) *State* v. *Cofield*, 220 Conn. 38, 45–46, 595 A.2d 1349 (1991). "[A] deficiency in one [factor] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability"; *Illinois* v. *Gates*, supra, 233; such as corroboration by the police. The police, however, are not required to corroborate all of the information provided by a confidential informant. See id., 246; *State* v. *Cofield*, supra, 47. Partial corroboration may suffice. *State* v. *Cofield*, supra, 47–48.

I

Prior to arguing the specific deficiencies of the tip, the defendant maintains that the court relied on the wrong version of the tip when it conducted its analysis of his claim. As the first two arguments proffered by the defendant are based on his analysis of a version of the tip that was not credited by the court, this argument must be addressed before reaching the merits of his specific arguments attacking the legal conclusions of the court.

At the hearing, the court heard testimony from Boutote and Cizauskas regarding the contents of the tip. The versions differed in one important respect; Cizauskas testified that he was told that the defendant would be leaving shortly *with the cocaine in his vehicle*, whereas Boutote testified that the informant stated only that the defendant would be leaving shortly. The defendant argues that the court should have credited Boutote's testimony over that of Cizauskas because Boutote was

the recipient of the original tip and Cizauskas could not have known facts that were not relayed to him. This argument fails, however, because credibility determinations fall within the province of the trial court, and the record contains sufficient evidence on which the court reasonably could have relied in determining that Cizauskas had a better recollection of the contents of the tip.[4] "This court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . In a case that is tried to the court . . . the judge is the sole arbiter of the credibility of witnesses, and the weight to be given to their specific testimony." (Internal quotation marks omitted.) *State* v. *Silva*, 65 Conn. App. 234, 263, 783 A.2d 7, cert. denied, 258 Conn. 929, 783 A.2d 1031 (2001).

Having determined that the court did not erroneously credit the testimony of Cizauskas over Boutote, we now review the legal conclusions of the court to determine if, on the basis of the information provided in the tip according to Cizauskas, the investigatory stop effectuated in this case was premised on a reasonable and articulable suspicion. The defendant first argues that the informant's tip was vague and contained substantial ambiguity that was not sufficiently corroborated to support a finding of reasonable and articulable suspicion. He maintains that although the contents of the tip indicated the possibility that the defendant would have the

---

[4] The court credited the testimony of Cizauskas over that of Boutote on the ground that Cizauskas' testimony was corroborated by the police report filed soon after the incident. The consistency between Cizauskas' testimony and the police report when compared to Boutote's recollection of the events at the suppression hearing was highly relevant to the court in its credibility determination, given the passage of time between the arrest and the elicitation of the testimony at the suppression hearing. The court also noted that Boutote did not take any notes of his conversation with his informant but rather merely passed the information along.

drugs in his possession when he left the restaurant, the tip did not exclude several other reasonable interpretations of the information that did not involve the transportation of the drugs in the vehicle subsequently stopped by the police. This argument ignores the court's acceptance of Cizauskas' testimony in which he stated that he was informed that the defendant would "be leaving shortly with the cocaine in the vehicle." This testimony is not vague or ambiguous about the possibility that cocaine would be in the vehicle. Accordingly, the defendant's argument on this ground fails.

Likewise, the defendant also argues that the tip provided an insufficient basis for a finding of reasonable and articulable suspicion because it failed to link illegal activity to the defendant outside of the restaurant. Cizauskas' testimony was clear that he received a tip that the defendant "was in Greco's Pizza on East Main Street, Waterbury, packaging up cocaine for sale . . . and that he would be leaving shortly with the cocaine in the vehicle." Accordingly, the defendant's argument on this claim is also without merit.

## II

The defendant next argues that the tip lacked the reliability necessary to support a reasonable and articulable suspicion. Specifically, the defendant contends that the informant did not provide a basis of knowledge to substantiate the allegations in the tip. We review this argument cognizant of the fact that the informant's basis of knowledge is just one element of the totality of circumstances analysis that a court must engage in to determine whether a reasonable and articulable suspicion existed. See *State* v. *Cofield*, supra, 220 Conn. 45. As stated previously, the informant's veracity, reliability and basis of knowledge are all highly relevant. Id., 46.

This court's analysis in *State* v. *Leonard*, 31 Conn. App. 178, 187–88, 623 A.2d 1052, cert. granted, 226 Conn. 912, 628 A.2d 985 (1993) (appeal withdrawn January 7,

1994), is particularly instructive in our resolution of the present appeal. In *Leonard*, a case sharing a factual predicate with the present matter, a confidential informant reported a tip to a detective with the New Britain police department. The informant told the police that "two black males, one of whom was the defendant, James Leonard, were coming back to New Britain . . . to a six-family dwelling on Silver Street with a large quantity of heroin, and that the defendant would be driving a black Ford Taurus." Id., 180–81. On six occasions, the informant had provided reliable information to the officer that had resulted in six convictions. Id., 187. Upon receiving this tip, the police went to the designated location and observed two black men, one of whom was the defendant, approach, unlock and enter a vehicle matching the informant's description. Id., 181. Taking into account the established reliability of the informant, the court determined that there was sufficient corroboration of the tip to establish its veracity and, therefore, justify the ensuing investigatory stop of the defendant in his vehicle. The court concluded that "[a]lthough [a]ny one of these factors is not by itself proof of illegal conduct, taken together, they amount to reasonable suspicion. . . . Viewing the totality of circumstances in this case, we conclude that the informant supplied the officers with information that had sufficient indicia of reliability and corresponded adequately with their observations [at the scene] to provide them with a reasonable and articulable suspicion sufficient to justify approaching the defendant's car for further investigation." (Citations omitted; internal quotation marks omitted.) Id., 187. Accordingly, this court upheld the trial court's denial of the defendant's motion to suppress.

The present matter shares marked similarities with *Leonard*. Here, Boutote received a tip from a confidential informant that he believed to be reliable on the basis of previous encounters. At the suppression hearing, he

testified that he had received information from this informant at least ten times, and on approximately five occasions, the tips had resulted in arrests and convictions. Furthermore, on the occasions that the information did not result in an arrest, Boutote testified, this was not due to the informant's unreliability but, rather, was the result of cases that went stale or did not contain enough information to allow the police to pursue an investigation. Boutote specifically testified that the informant had never provided information that was bad or untruthful. Furthermore, the informant was able to provide a detailed physical description of the defendant and his vehicle and also indicated predicative information of when the defendant was anticipated to leave the restaurant. The police corroborated all of this identifying information prior to the investigative stop to ascertain the veracity of the tip. Accordingly, viewing the totality of the circumstances, we conclude that the informant supplied sufficient information containing the requisite indicia of reliability to justify the subsequent investigative stop. The court properly concluded that the police had a reasonable and articulable suspicion of illegal activity.[5]

The judgment is affirmed.

In this opinion the other judges concurred.

[5] In his brief, the defendant cites *United States* v. *Reaves*, 512 F.3d 123 (4th Cir. 2008), to support his contention that descriptive information from an informant is not sufficient to establish the tip's reliability. Specifically, the defendant quotes the portion of *Reaves* stating that a "tipster's accurate description of a suspect's location and appearance is reliable in th[e] limited sense [that] it will help the police correctly identify the person whom the tipster means to accuse, but it does not show that the tipster has knowledge of . . . criminal activity." (Internal quotation marks omitted.) Id., 127.

The defendant's excerpt, however, is not an accurate representation of the court's analysis because it omits one word that creates a highly relevant distinction. The statement in *Reaves* is specifically addressing an "anonymous tipster," the word "anonymous" being omitted from the defendant's interpretation of the court's conclusion. Under a totality of circumstances analysis, the weight given to the reliability of an anonymous tipster differs substantially from that afforded to a confidential informant with a proven

record of reliability. Tips from known, reliable informants require less verifying detail than tips from anonymous sources. Compare *Florida* v. *J. L.*, 529 U.S. 266, 272, 120 S. Ct. 1375, 146 L. Ed. 2d 254 (2000) (tip relating only suspect's location and appearance does not contain requisite indicia of reliability to corroborate anonymous tipster's knowledge of criminal activity) with *State* v. *Leonard*, supra, 31 Conn. App. 187–88 (confidential informant's tip relating suspect's location and appearance to report criminal activity can establish sufficient indicia of reliability when corroborated by police).